EXHIBIT "E"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------X
                                 :
Application of Reuben Taub and   :
Hindy Taub,                      :
              Petitioners,       :
                                 :
For a Judgment Pursuant to CPLR  :     Index No.116878/09
5225(b) and/or 5227 to Compel    :
Payment of Money or Delivery of  :
Property                         :
                                 :
against                          :
                                 :
IRA DANIEL TOKAYER,              :
              Respondent.        :
--------------------------------X


                MEMORANDUM OF LAW IN OPPOSITION TO
                THE TRUSTEE'S MOTION TO INTERVENE


        This memorandum of law is submitted in opposition to the

motion of the Chapter 7 bankruptcy trustee (the "Trustee") of

Arbco Capital Management, LLP ("Arbco") to intervene in the

instant turnover proceeding pursuant to CPLR § 5239.


                        PRELIMINARY STATEMENT

        The petitioners above ("Taub") are perfected judgment lien

creditors in settlement funds (the "DVP Funds") belonging to the

judgment debtor, DVP Global Trading, LLC.("DVP"), paid to and

held by its attorney Ira Daniel Tokayer ("Tokayer").  Having

entered judgment, executed and levied against the funds, Taub

                               1

moved for an order directing Tokayer to turnover the DVP Funds in partial satisfaction of Taub's perfected judgment lien.

The Trustee moves to intervene in these proceedings pursuant to CPLR § 5239. However, under the bankruptcy code, the DVP Funds are not property of the estate, not subject to the bankruptcy stay or subject to unadjudicated claims laid by Trustee, the complaint filed against Tokayer by the Trustee seeking a turnover is defective, subject to dismissal and the Trustee cannot show any lien or claim that is superior to the perfected judgment lien of Taub.

As a result, the Trustee's motion to intervene pursuant to CPLR § 5239 should be denied.

### FACTS

On November 9, 2009, Taub entered judgment against DVP in the amount of $1,123,753.22. On November 10, 2009, an execution was issued and delivered to Stephen W. Beigel, a New York City Marshal who, on November 11, 2009, served the execution with a levy and demand on the respondent, Tokayer, who was holding the DVP Funds. The levy was accepted by Tokayer on November 11, 2009. (Ex. A, Judgment, Execution and Levy.)

The DVP Funds held by Tokayer resulted from the settlement of a litigation involving DVP. Under the terms of the settlement agreement, the settlement funds were paid to DVP through its

2

attorney Tokayer[1]. (Ex. B, DVP Settlement.) In settlement of
that litigation, the defendants paid $485,000.00 to the Tokayer
**in full settlement of DVP claims**. (Horan Aff. ¶3.)(emphasis
added.)

On October 19, 2007, Arbco creditors, including Taub, filed
an involuntary petition in the bankruptcy court against Arbco.
An Order of Relief was entered against Arbco on November 26,
2007 under Chapter 7 of the Bankruptcy Code. (Aff. of J. Ted
Donovan in Support (Donovan Aff. ¶6.)

Regensberg defrauded investors through Arbco and was
subsequently convicted for the fraud. (Donovan Aff. ¶5.) In
fact, Taub was instrumental in discovering the fraud and
bringing the criminal case to the U.S. Prosecutor.

No one is more aware that Regensberg was a scoundrel than
Taub. Not only was Taub instrumental in the criminal action
against Regensberg, of the petitioning creditors in the Arbco
bankruptcy, none claimed to be owed more that Taub, having lost
more than $2,000,000.00. (Donovan Aff., Ex. A.)

Two years after his appointment, in or about October, 2009,
the Arbco trustee brought an adversary proceeding against
Regensberg. (Ex. C, Regensberg Complaint.) While the trustee
alleges that another entity, Midwest Trading, LLC, was an "alter

---

[1]     Although the action was initially brought by Hayim Regensberg
("Regensberg"), in the face of a motion to dismiss since the trading account
which was the subject of the litigation did not belong to Regensberg, an
amended complaint was filed added DVP, the owner of the accounts, as a
plaintiff.

ego" for Arbco and that they should be substantively consolidated as a single bankruptcy estate, the Regensberg Complaint, does not mention DVP as an alter ego for Arbco. *It does not mention DVP at all.* (Ex. C, Regensberg Complaint, ¶¶8-12.)

At or about that same time the Trustee filed the Regensberg Complaint, he filed a complaint against Regensberg, DVP and Tokayer seeking the turnover the DVP Funds (the "Tokayer Complaint"). (Ex. D, Tokayer Complaint.) The sole cause of action in the Tokayer Complaint seeks the turnover and surrender of the DVP Funds held by Tokayer. (Ex. D, ¶¶ 26-28.)

The Tokayer is named in the complaint merely as "an escrow holder without any personal liability". (Ex. D, ¶8.) The *sole cause of action* in the Tokayer Complaint is asserted against Tokayer, as "an escrow holder without any personal liability" and a "custodian of property belonging to the Debtor's bankruptcy estate, as that term is used in Section 543 of the Bankruptcy Code[2]." (Ex. D, ¶¶ 8, 26-28.)

It is significant to note that the only link asserted between DVP and Regensberg in the Tokayer Complaint, or in any complaint filed by the Trustee, is that DVP "is owned and controlled by Regensberg, in whole or in part". (Ex. D, ¶ 7.)

---

[2] The terms custodian is defined in 11 U.S.C. § 101(10) and refers to *property of the debtor*. DVP is not a debtor and the DVP Funds, as shown below, is not property of the Arbco estate. Curiously, the Trustee seeks relief in the Tokayer Complaint under 11 U.S.C. § 542, although property held by custodians is specifically excluded. 11 U.S.C. § 542(a).

No other allegation is contained in the Tokayer Complaint or the
Regensberg Complaint implicates any link between Regensberg and
DVP.

The Trustee claims to assert two "important facts" its
petition to intervene in these proceedings.  First is that it
the trustee is entitled to pierce DVP's corporate form and find
that it is an alter ego for Arbco and or Midwest, although there
are no facts asserted in adversary proceeding by which the
trustee can obtain this relief. (Donovan Aff. ¶ 15.)

Second is that the Trustee is entitled to such portion of
the DVP Funds that belong to Regensberg[3]. (Donovan Aff. ¶18.)
However, as shown, the DVP Funds do not belong to Regensberg.


### TAUB CLAIM HAS PRIORITY SINCE TAUB HAS
### A PERFECTED JUDGMENT LIEN IN THE DVP FUNDS


As shown below, the DVP Funds are not property of the Arbco
estate and there are no judgment or lien claims to the DVP Funds
that competes with the Taubs' judgment[4], by the Trustee or anyone
else.

The DVP Funds are litigation settlement funds paid to
Tokayer, as DVP's attorney.   (Ex. B, DVP Settlement Agreement.)

---

[3]    The Trustee takes certain liberties in making this assertion since the
Trustee does not have a judgment against Regensberg.

[4]    I do not include the attorney charging liens, which are dealt with
elsewhere in these proceedings.

The DVP Funds were **paid to settle DVP's claims.** (Horan Aff. ¶3.)(emphasis added.)

Under CPLR § 5201(b), DVP's property is subject to enforcement of the Taub's judgment. The funds held by Tokayer are DVP's property and are subject to Taub's judgment.

Taub's actions to enforce the judgment created a perfected judgment lien in the DVP Funds. Pursuant to CPLR 5230(b), issuance of the execution and delivery to the Marshal directing him to satisfy the petitioner's judgment from the DVP Funds, the personal property of the judgment debtor, DVP, made Taub a judgment lien creditor in the DVP Funds. (Ex. A.) When the execution was delivered to the Marshal Taub obtained rights in the DVP Funds superior to the rights of any transferee of the property as **judgment lien creditors.** CPLR § 5202(a); Hewlett Park Co., v. 1193-1205 East Broadway of Hewlett, Inc., et. al., 32 Misc. 2d 691 (Sp. Ct. 1961) aff'd 17 A.D.2d 736 (1st Dep't 1962).

Subsequently, when the Marshal served the execution on Tokayer, levying against the DVP Funds pursuant to CPLR § 5232, the Taub's **perfected their judgment lien in the DVP Funds.**

Taub's mediocre in personam rights against DVP apotheosized into in rem rights in the DVP Funds superior to any subsequent liens.

The Trustee speaks of its "laid claim" to DVP Funds in the Tokayer Complaint. (Donovan Aff. ¶3.) But the Trustee does not mention any lien claim that is or that would be prior to Taub's perfected judgment lien. There are no claims, other than Tokayer's charging lien, that competes to the Taub perfected judgment lien in the DVP Funds.

## THE TRUSTEE'S CPLR § 5239 MOTION SHOULD BE DENIED SINCE THEY DO NOT HAVE AND CANNOT HAVE LIEN SUPERIOR TO TAUB'S PERFECTED JUDGMENT LIEN

The Trustee moved pursuant to CPLR § 5239 to have this court determine the Trustee's adverse claim. The general purpose of CPLR § 5239 is to provide a proceeding to determine the priorities of creditors of various stripes having diverse **claims of liens** competing with the judgment creditor's lien. CPLR §§ 5225(b), 5227 and 5239 are priority-determining proceedings. Siegel, New York Practice, 4th ed. § 521; Bank Leumi Trust Co. v. Liggett, 115 A.D.2d 378, 380, 496 N.Y.S.2d 14 (1st Dep't 1985).

The Trustee has no lien, asserts no lien and can have no lien in the DVP Funds or other claim that would have priority over Taub's perfected judgment lien. There is no lien claim to have a priority determined under CPLR § 5239.

As of the time of the execution, levy and the instant petition the DVP Funds **are not even property of the Arbco**

*estate*[5]. 11 U.S.C. § 541(a) (3). There is no judgment in favor of the Trustee.

The Trustee half heartedly and perhaps disingenuously asserts that the Taub turnover proceedings may be subject to the automatic stay under the Bankruptcy Code (the "Code"). (Donovan Aff. ¶ 3.) In the absence of any judgment in favor of the Trustee making the DVP Funds property of the estate, this assertion is incorrect. <u>Everything Yogurt, Inc. v. Toscano</u>, 231 A.D.2d 604, 649 N.Y.S.2d 163 (2nd Dept. 1996).

As a general proposition, "[t]he automatic stay does not apply to actions against third parties or property of third parties." Douglas G. Baird, *The Elements of Bankruptcy* 190 (1992). All the parties involved in the creation of Taub's execution and levy on the DVP Funds and its turnover are strangers to the Arbco bankruptcy.

Section 362 of the Code provides for an automatic stay *against property of the debtors estate*. 11 U.S.C. § 362. While the stay is broad, it is not without limit. It is limited to property of the bankruptcy estate. Similarly, the definition of the property of the estate, while broad, is limited to property actually owned by the debtor. Property subject to a fraudulent conveyance proceeding or similar recovery proceeding by a

---

[5] That the DVP Funds are not property of the Arbco estate has implications with respect to the trustee's Tokayer Complaint seeking turnover under 11 U.S.C. § 542 and whether Tokayer is a custodian under 11 U.S.C. § 543 and § 101(11).

trustee is not property of the estate until and unless the
trustee prevails in an avoidance action. 11 U.S.C. §
541(a)(3)(property of the estate includes "[a]ny interest in
property that the trustee recovers … under this title"); FDIC v.
Hirsch (In re Colonial Realty Co.) 980 F. 2d 125, 131 (2nd Cir.
1992); Savage & Assocs., P.C. v. BLR Servs. SAS (In re Teligent,
Inc.) 307 B.R. 744, 751 (Bankr. S.D. N.Y. 2004); Everything
Yogurt v. Toscano, 649 N.Y.S.2d 163 (2nd Dept. 1996).

DVP is not a debtor in bankruptcy and the Trustee has not
recovered the DVP Funds. Therefore, the automatic stay does not
apply to DVP or the DVP Funds.

Trustee's assertion that "it would appear" that these
proceeding are subject to the automatic stay since the Trustee
"laid claim" to the DVP Funds in an adversary proceeding seeking
the turnover of the DVP Funds pursuant to 11 U.S.C. § 542 is
wrong and seeks to at best improperly delay and prevent Taub
from recovering what rightfully belongs to Taub by virtue of
their perfected judgment lien interest and at worst misstates
the law to this Court. (Donavan Aff. ¶ 3.)

There is no authority for the Trustee's *laid claim*" theory
to the DVP Funds because none exists. (Donovan Aff. ¶ 3.) As
noted above, black letter bankruptcy law holds that the mere

pendency of a bankruptcy court complaint seeking recovery of an asset does not trigger the automatic stay[6].

The Tokayer Complaint details the misconduct of Regensberg, a non-debtor and concludes that Regensberg could be an alter ego of Midwest Trading, LLC (another non-debtor) which could be an alter ego of Arbco, the debtor. The Trustee does not include DVP in the alter ego "daisy chain". Nonetheless, the Trustee demands turnover of the DVP Funds as they could somehow be deemed property of the Arbco estate without having any judgment to that effect.

Remarkably, the legal basis for the Tokayer Complaint is even weaker then its purported factual basis. The Tokayer Complaint seeks the turnover of the DVP Funds to the Trustee pursuant to § 542 of the Code (Turnover of property of the estate). An action cannot be brought under § 542 when the claim to the property is in dispute. 5 Collier on Bankruptcy, ¶542.02[1]; <u>Stanziale v. Pepper Hamilton, LLP</u> (In re Student Fin. Corp.), 335 B.R. 539, 554 (D. Del. 2005)(in order to state a claim for turnover of property under § 542, a plaintiff **must allege that transfer of the property has already been avoided or that the property is otherwise the undisputed property of the**

---

[6]      Nor has the Trustee sought injunctive relief in the bankruptcy court pursuant to rule 65 of the Federal Rules of Civil Procedure as incorporated in Bankruptcy Rule 7065. It would seem that the Trustee has not sought such relief is that the Tokayer Complaint is both legally and factually too thin to support such injunctive relief.

**bankruptcy estate**, if the Trustee has not made, and cannot make that allegation. the Court will dismiss the complaint).

A section 542 turnover proceeding only applies to "an entity that owes a debt **that is property of the estate** and that is matured, payable on demand or payable on order. 11 U.S.C. § 542(b)(emphasis added). To be a matured debt, a claim must be specific in its terms as to the amount due and date payable. In re Teligent, Inc., 325 B.R. 134, 138 (Bankr. S.D.N.Y. 2005)(trustee cannot compel the turnover of non-estate property under 11 U.S.C. § 542, and circumvent the more restrictive fraudulent transfer claim process) citing Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1102 (2nd Cir. 1993); accord, In re Ticketplanet.com, 313 B.R. 46, 67 (Bankr. S.D.N.Y. 2004); In re Shea & Gould, 198 B.R. 861, 867 (Bankr. S.D.N.Y. 1996).

The Tokayer Complaint would be subject to dismissal since it does not specify a debt nor establish that the debt is matured and payable on demand, as required by 11 U.S.C. § 542 and would be subject to dismissal.

The Trustee does not properly plead the elements of its alter ego claim. Wm. Passalacqua Builders v. Resnick Developers, 933 F2d 131, 139 (2nd Cir. 1991) The lack of factual assertions in the Tokayer Complaint would subject it to dismissal for failure to plead any fraud on which to base an

alter ego claim with the required particularity. See, e.g. In re

Ticketplanet.com, 313  B.R. 46, 67 (Bankr. S.D.N.Y. 2004)(J.

Gropper.)

The automatic stay enjoins neither the Taub's turnover

proceedings nor an order directing Tokayer to turnover the DVP

Funds.  The turnover of the DVP Funds to Taub is a third party

judgment debtor payment to a third party judgment lien creditor

out of funds that are not part of any bankrupt's estate.

Furthermore, the mere existence of the pending adversary

proceedings in the bankruptcy court, even if successful, does

not give the Trustee any greater rights to intervene in this

case than any other party would have in any other action that

might be pending against DVP in any other forum.  Under the

principals set out the DVP Funds would still be subject to the

Taub perfected judgment lien from which there would be no

surplus.

CONCLUSION

There is no reason to permit the Trustee to intervene since the Trustee make and can make no claim which would be a priority to the perfected judgment lien claim of Taub. The Trustee's motion should be denied.

Respectfully submitted,

Daniel M. Hartman
Attorney for Petitioner Taub
489 Fifth Avenue, 28th Floor
New York, New York 10017
212-986-8600