Daniel M. Hartman, Esq.
489 Fifth Avenue, 28th Floor
New York, New York 10017
212-986-8600
dhart25@aol.com

Mark Frankel
Backenroth, Frankel and Krinsky
489 Fifth Avenue, 28th Floor
New York, New York 10017
212-593-1100
mfrankel@bfklaw.com

Attorneys for Petitioner

UNITED STATES BANRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br>Reuben Taub and Hindy Taub,<br><br>               Petitioner,<br>     And<br><br>Ira Daniel Tokayer and Richard O'Connell,<br>Chapter 7 bankruptcy trustee of Arbco Capital<br>Management, LLP,<br>               Respondent | Case No.: No. 10 -03007(SCC)<br><br>Notice of Motion to Remand<br><br>Return Date: May 18, 2010 |

PLEASE TAKE NOTICE, that pursuant to 28 U.S.C. §§ 1452(b), 1447(c), 1337(c)(1), 1337(c)(2) and 1447(c) and Bankruptcy rule 9027 on May 18, 2010 at 10:00 a.m., a hearing ("Hearing") will be held before the Honorable Shelley C. Chapman, United States Bankruptcy Judge, United States Bankruptcy Court, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10014, in Courtroom 610, or as soon thereafter as counsel may be heard, to consider the motion of the petitioners Rueben Taub and Hindy Taub ("Taub") in the above proceeding for an order remanding the above captioned proceeding, removed by respondent Richard O'Connell, pursuant to a Notice of Removal filed on March 17, 2010

purporting to remove the special proceeding from the State Court (as defined in the Motion), or in the alternative abstaining from hearing this proceeding and in the event the court orders a remand that the court should retain jurisdiction over an award of costs pursuant to U.S.C. § 1452(c) so that Taub can later formally move for such relief and for such other further relief as to the Court is just and proper. .

PLEASE TAKE FURTHER NOTICE that opposition and/or responsive papers, if any, must be served upon and received by the undersigned counsel on or before three (3) days prior to the return date of the motion.

Dated this 13th day of April, 2010

Daniel M. Hartman, Esq.
489 Fifth Avenue, 28th Floor
New York, New York 10017
212-986-8600

Mark Frankel
Backenroth, Frankel and Krinsky
489 Fifth Avenue, 28th Floor
New York, New York 10017

UNITED STATES BANRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br>Reuben Taub and Hindy Taub,<br><br>                Plaintiff,<br>   And<br><br>Ira Daniel Tokayer and Richard O'Connell,<br>Chapter 7 bankruptcy trustee of Arbco Capital<br>Management, LLP,<br>                Defendants. | Case No.: No. 10 -03007<br><br><u>Certification of Service</u> |

       Daniel M. Hartman, Esq., pursuant to 28 U.S.C. § 1746, declares under penalty of perjury that I am over 18 years of age and not a party to this action and that on April 13, 2010, 2010, I served the attached Plaintiff's Notice of Motion for Remand by electronically filing and mailing true and accurate copies of same by United State mail, postage prepaid, on the following attorneys at the addresses below:

J. Ted Donovan
Goldberg, Weprin, Finkel Goldstein, LLP
Attorneys for Richard O'Connell, Trustee
1501 Broadway, 22nd Fl.
New York, New York 10036

John R. Horan
Attorney for Ira Daniel Tokayer
Fox, Horan & Camerini, LLP
825 Third Avenue
New York, New York 10022

Dated: April 13, 2010
      New York, New York

                                 _____
                                  Daniel M. Hartman, Esq.

Daniel M. Hartman, Esq.
489 Fifth Avenue, 28th Floor
New York, New York 10017
212-986-8600
dhart25@aol.com

Mark Frankel
Backenroth, Frankel and Krinsky
489 Fifth Avenue, 28th Floor
New York, New York 10017
212-593-1100
mfrankel@bfklaw.com

Attorneys for Petitioner

UNITED STATES BANRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br>Reuben Taub and Hindy Taub,<br><br>                 Petitioner,<br>    And<br><br>Ira Daniel Tokayer and Richard O'Connell,<br>Chapter 7 bankruptcy trustee of Arbco Capital<br>Management, LLP,<br>                 Respondent | Case No.: No. 10 -03007(SCC)<br><br>Affirmation of Daniel M. Hartman |

Daniel M. Hartman, an attorney licensed to practice before this court, affirms under penalty of perjury:

1.      I am counsel to Reuben Taub and Hindy Taub ("Taub"), the petitioners named above and submit this affirmation in support of Taub's motion to remand this action to the Supreme Court of the State of New York, New York County.

2.      Taub also moves to reserve their right to move for an award of costs pursuant to 28 U.S.C. § 1452(c) if the court remands by retaining jurisdiction over the issue of an award of costs so that Taub can formally move at a later time.

3.      On or about March 17, 2010, Richard O'Connell, the trustee (the "Trustee") in a chapter 7 bankruptcy, entitled Arbco Capital Management, LLP, filed a notice of removal of a pending New York State Court turnover special proceeding commence by Taub (the "State Court Action").

4.      To complete the record before the court, I annex to this affirmation papers submitted by Taub in opposition to the Trustee's motion to intervene in the State Court Action which were not submitted to this court by the Trustee with the notice of removal. (Ex. A.)

5.      All the case material of the State Court Action, including the affirmations and exhibits are incorporated into this motion.

6.      Taub brought a New York State turnover special proceeding against Ira Daniel Tokayer ("Tokayer") who was holding funds (the "DVP Funds") belonging to DVP Global Trading, LLC. ("DVP"), the judgment debtor of a New York State judgment obtained by Taub against DVP. (Notice of Removal, Ex. A.)

7.      Taub is a New York state citizen as is Tokayer, an attorney living a practicing in New York State.

8.      Taub, under New York State law, held a perfected judgment lien in the DVP Funds. (Notice of Removal, Ex. A, Ex. B, Execution and Levy.)

9.      As a result, under the laws of the State of New York, Taub obtained an in rem interest in the DVP Funds that is superior to any other interest.

10.     Tokayer came to hold the DVP Funds as the result of settlement in an action New York County entitled <u>DVP v. Generic</u>, Index No. 11582/2003 in which Tokayer represented DVP and Hayim Regensberg.

11.     The DVP Funds were paid to DVP in settlement of DVP's claims and not Regensberg's claims. (Ex. A, , Ex. B, Settlement Agreement, ¶1).

12.     Although the action was originally brought in the name of Regensberg, it was determined that Regensberg had no claim and the complaint to amended to add DVP as party as a result[1].

13.     The Trustee moved to "intervene", pursuant to New York State Civil Practice Rules and Law ("CPLR") § 5239, in the State Court Action to have that court determine the Trustee's adverse claim.

14.     The general purpose of CPLR § 5239 is to provide a proceeding to determine the priorities of creditors of various stripes having diverse *claims of liens* competing with the judgment creditor's lien.

15.     Taub objected to permitting to the Trustee intervene, pointing out various defects in the Trustee's claims, including the un-adjudicated turnover proceeding brought against Tokayer. (See, Ex. A, and Notice of Removal, Ex. E.)

16.     In deference to the Trustee's alleged claims, the court permitted the Trustee to intervene in order to have those claims heard[2].

---

[1]     With respect to this motion, Regensberg's involvement in the action is of no moment since Regensberg is not the debtor in bankruptcy and was not a party to the payment of the DVP Funds.

[2]     The court explicitly advised the Trustee that to have its order entered, a copy of the court transcript must be obtained, submitted to the court for corrections and to be "so ordered" and entered. The Trustee admits that the order was not entered. Notice of Removal. It is my understanding that the case remains with New York Supreme Court Judge Marcy Friedman and no decision has been entered.

17.     It is apparent that the Trustee had no intention of presenting its alleged claims to the New York State Court.

18.     Although the Trustee participated in a conference in which a briefing schedule was negotiated and set by the State Court, the day before the Trustee's papers were due to be served and filed, the Trustee filed its bare-bones notice of removal.

19.     The Trustee, armed with neither a lien nor judgment and without any claim that would be prior to Taub's perfected judgment lien, and, as shown by this motion, without federal court jurisdiction, the Trustee removed the State Court Action.

20.     The facts relevant to the State Court Action have already been asserted in the State Court Action and Taub respectfully directs the courts attention to the papers from the State Court Action.

21.     The issue before this court on the instant motion is one of jurisdiction and whether the court must or should abstain from hearing the removed State Court Action, remanding it back to the New York Supreme Court.

22.     As shown in the memorandum of law in support of this motion, this court lacks jurisdiction over the plainly made claims made by Taub in the State Court Action as reflected in their special proceeding petition.  (Notice of Removal, Ex. A.)

23.     There is neither "arising in", "arising under" or "related to" jurisdiction over what is simply and clear a garden variety state court action among non-debtor parties and which will have no impact on the Arbco bankruptcy.

24.     In the absence of federal jurisdiction the court must remand the State Court Action.

25.     Furthermore, even if the court would find some basis for "related to" jurisdiction, the State Court Action is non-core and this court must abstain and remand the State Court Action pursuant to 28 U.S.C. § 1334(c)(2).

26.     If the court determines that the removed State Court Action is a core proceeding, discretionary abstention is warranted under 28 U.S.C. § 1334(c)(1).

27.     Finally, if the court remands the State Court Action, Taub seeks to reserve it right to move for an award of cost pursuant to 28 U.S.C. § 1452(c) asking the court to retain jurisdiction over an award of costs.

WHEREFORE, petitioners respectfully demand an order remanding the State Court Action and in the event the court remands it retain jurisdiction over an award of costs so Taub can then formally move.

Dated:      April 13, 2010
            New York, New York

_____
Daniel M. Hartman
Attorney for the Petitioners Taub
489 Fifth Avenue, 28th Floor
New York, New York 10017
212-986-8600

EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
---------------------------------X
                                  :
Application of Reuben Taub and    :
Hindy Taub,                       :
            Petitioners,          :
                                  :        Index No.116878/2009
For a Judgment Pursuant to CPLR   :
5225(b) and/or 5227 to Compel     :        AFFIRMATION
Payment of Money or Delivery of   :
Property                          :
                                  :
against                           :
                                  :
IRA DANIEL TOKAYER,               :
            Respondent.           :
---------------------------------X

Daniel M. Hartman, an attorney licensed to practice before the courts of the state of New York, under penalty of perjury, says:

1.    I am the attorney for the petitioners in the above captioned action ("Taub"), who have a perfected judgment lien in funds held by respondent, Ira Daniel Tokayer ("Tokayer") belonging to DVP Global Trading, LLC. (the "DVP Funds").

2.    This affirmation is submitted in opposition to the motion of Richard O'Connell (the "Trustee"), Chapter 7 bankruptcy trustee of Arbco Capital Management, LLP ("Arbco"), to "intervene", pursuant to CPLR § 5239, in the instant action since the Trustee has no claim that competes with the Taub's perfected judgment lien. (Affirmation of J. Ted Donovan ("Donovan Aff.") ¶ 4.)

3.    The Trustee's petition should be denied since the Trustee does not show, and as a matter of law does not posses, any claim that has or that would have priority to Taub's perfected judgment lien in the DVP Funds.

4.    Proceedings under CPLR § 5239 are meant to determine the priorities of creditors of various stripes having diverse **claims of liens** competing with the judgment creditor's lien.

5.    The Trustee, armed with neither a lien nor judgment, does not and cannot assert any claim that would prior to Taub's perfected judgment lien.

6.    Under bankruptcy law, the DVP Funds are not property of the Arbco bankruptcy estate, is not subject to the bankruptcy stay, makes the Trustee's turnover complaint defective and defeats the Trustee's assertion of any priority claim over Taub's perfected judgment lien.

7.    Taub obtained a **perfected judgment lien** in the DVP Funds by entry of a judgment against DVP on November 9, 2009 in the amount of $1,123,753.22, the issuance and delivery of an execution to Stephen W. Beigel, a New York City Marshal on November 10, 2009, who, on November 11, 2010, served the execution with a levy and demand on Tokayer, who was holding DVP Funds. The levy was accepted by Tokayer on November 11, 2010. (Ex. A, Judgment, Execution & Levy.)

8.   As a result, Taub obtained an in rem interest in the DVP Funds that is superior to any other interest.

9.   When Tokayer refused to turnover the DVP Funds to the Marshal in light of, inter alia, the adversary proceeding commenced against Tokayer by the Trustee seeking the turnover of the DVP Funds (the "Tokayer Complaint"), Taub petitioned this court for an order directing Tokayer to turnover the DVP Funds.

10.   The Tokayer Complaint has no implications for the DVP Funds since the DVP Funds are not property of the Arbco bankruptcy estate and since the complaint and Trustee's assertions are deficient.

11.   DVP, the DVP Funds and those involved in the payment of the DVP Funds are all third party strangers to the Arbco bankruptcy.

12.   The DVP Funds were paid by a third-party to a third-party, just as Taub's perfected judgment lien is between third parties relative to the Arbco bankruptcy.

13.   The DVP Funds, held by Tokayer for DVP, resulted from the settlement of a litigation involving DVP.

14.   Under the terms of the settlement agreement, the settlement funds were paid to DVP through its attorney Tokayer[1]. (Ex. B, DVP Settlement.)

_____

[1]   Although the action was initially brought by Hayim Regensberg ("Regensberg"), in the face of a motion to dismiss since the trading account which was the subject of the litigation did not belong to Regensberg, an

15.   The settlement agreement states that "lead defendant Carlin **shall pay DVP** the sum of $485,000.00 (the "Settlement Sum") by delivering a check to Ira Tokayer, Esq., payable to Ira Tokayer, Esq., as attorney for DVP Global Trading LLC." (Ex. B, ¶1.)(emphasis added)

16.   Consistent with the terms of the DVP Settlement, in the response to Taub's petition, Tokayer's attorney testified that "in settlement of that litigation, the defendants paid $485,000.00 to the Tokayer **in full settlement of DVP claims.**" (Ex. E, Horan Aff. ¶3.)(emphasis added.)

17.   Under the DVP settlement, a third party, Carlin paid a non-debtor third party, DVP, property, the DVP Funds, which was not property of the Arbco bankruptcy estate, and that was subject to Taub's perfected judgment lien.

18.   The DVP Funds was not property of the Arbco bankruptcy estate at the time of the execution and levy and this remains true today[2].

19.   The notion that the Trustee would be entitled to that portion of the DVP Funds that belong to Regensberg fails on two counts. (Donovan Aff. ¶ 18.)

---

amended complaint was filed adding DVP, the owner of the accounts, as a plaintiff.

    Since the DVP Funds are not property of the Arbco bankruptcy estate, the Tokayer Complaint seeking a turnover under 11 U.S.C. §§ 542 or 543 is defective. See, accompanying Memorandum of Law.

20.   First, presently the Trustee has only "laid claim" against Regensberg and has no judgment[3].

21.   Second, and more importantly, Regensberg has no interest in the DVP Funds under the terms settlement agreement.

22.   Taub does not dispute that Regensberg defrauded investors through Arbco and was subsequently convicted for the fraud. (Donovan Aff. ¶5.)

23.   No one is more aware of this than Taub.

24.   Taub was instrumental in bringing the criminal case against Regensberg to the U.S. Prosecutor and the involuntary bankruptcy petition against Arbco.

25.   Of the petitioning creditors in the Arbco bankruptcy, none claimed to be owed more that Taub, having lost more than $2,000,000.00. (Donovan Aff. ¶6.)

26.   However, the Arbco bankruptcy has no implications for Taub's in rem interest in the DVP Funds since the DVP Funds are not property of the Arbco estate.

27.   A wide chasm that exists between Arbco and the DVP Funds.

28.   The Trustee makes only vague and conclusory allegations that DVP might be Regensberg's or Arbco's alter ego

---

[1]    Furthermore, even if Regensberg's 45% minority equity interest in DVP were available to satisfy such a judgment, Regensberg's minority equity interest is only a residual interest in DVP, a corporation, after DVP's creditors, such as Taub, are paid.

and lacks the particularity required for pleading fraud. (Donovan Aff. ¶¶ 15, 16.)

29.   The allegation that "Regensberg acted through DVP" from February 1999 to sometime in 2002 or 2003" does not sufficiently plead facts of an alter ego claim[4].

30.   The allegation of a single payment to Taub by Regensberg through Arbco is not enough to establish an alter ego claim[5].

31.   It is interesting to note that in the Trustee's adversary proceeding against Regensberg, DVP is not mentioned at all.   (Ex. C, Regensberg Complaint.)

32.   Even if the Trustee would subsequently obtain a judgment making DVP assets part of the bankruptcy estate, the DVP Funds would still be subject to Taub's prior perfected judgment lien which covers the entire amount of the DVP Funds leaving no surplus.

33.   Similarly, the Trustee allegation in the Tokayer Complaint that Regensberg's interest in the Litigation should be forfeited to the estate by virtue of his subsequent fraud is without merit. (Ex. C, ¶ 22.)

---

[4]   DVP was in the business of running a day trading operation and the Trustee's allegations lack particularized facts connecting DVP with the Regensberg fraud. (Ex. C, ¶18.)

[5]   If the Trustee thought that transfer was fraudulent, it could have sued Taub under 11 U.S.C. §548, although the statute of limitation for bringing such an action has lapsed.

34. Regensberg had no interest in the settlement and DVP Funds[6].

35. There is no such allegation in the Tokayer Complaint, nor can there be since no transfer has been avoid, the DVP Funds are not property of the estate and at the very least there is a dispute.

WHEREFORE, petitioners respectfully demand an order denying the Trustee's petition to intervene pursuant to CPLR 5239 and for such other and further relief as this court finds just.

Dated:     February 15, 2010
           New York, New York

_____
Daniel M. Hartman
Attorney for the Petitioners Taub
489 Fifth Avenue, 28th Floor
New York, New York 10017
212-986-8600

---

[6] The notion of forfeiture is without basis asserted by the Trustee is with out basis in law. Perhaps the Trustee can enforce a judgment against Regensberg obtained at some future time against Regensberg's minority interest in DVP but that is not forfeiture.

EXHIBIT A

THE COURT OF THE STATE OF NE  YORK
YORK COUNTY

------------------------------------X          Index No. 602135/2009

Reuben Taub and Hindy Taub                      **JUDGMENT**

                        Plaintiffs,

            -against-
DVP Global Trading, L.L.C.
                        Defendant.
------------------------------------X

The summons and verified complaint in the above entitled

action having been served upon the defendant, DVP Global Trading,

L.L.C., on the 20nd day of July, 2009, and the time for said

defendant to appear, answer or raise an objection to the motion in

point of law having expired, and said defendant not having

appeared, answered or raised an objection to the motion,

Now, upon the summons and verified of complaint, proof of

service thereof, it is hereby

ADJUDGED that the plaintiffs, Reuben Taub and Hindy Taub

of 607 West End Avenue, New York, New York have judgment and do

recover from the defendant DVP Global Trading, L.L.C., of

130 W. 42nd Street, New York, New York the sum of Nine Hundred

Fifty Thousand Dollars ($950,000.00), the amount claimed with

interest from November 1, 2007 at the rate of 9%, in the amount of

$173108.22      , together with costs and disbursements as

taxed by the clerk, in the amount of $645 00     , amounting in

all to the sum of $1123,153.22      , and that plaintiffs

have execution therefore.

_____
                Clerk

FILED

NOV = 9 2009

CLERK'S OFFICE
NEW YORK

B 320— [illegible blumberg text]

©1974 by Blumberg [illegible] www.blumberg.com

SUPREME ~~CIVIL~~ COURT OF THE ~~CITY~~ STATE OF NEW YORK, COUNTY OF

| | | |
|---|---|---|
| Reuben Taub and Hindy Taub | | *Index No.* 602135/2009 |
| *against* Plaintiff S | | |
| DVP Global Trading, L.L.C. | | *EXECUTION WITH NOTICE TO GARNISHEE* |
| Defendant | | |

## The People of the State of New York

TO THE SHERIFF OR ANY MARSHAL OF THE CITY OF NEW YORK, GREETING:

WHEREAS, *in an action in the* ~~Civil~~ *Court of the City of New York, County of* New York

*between* Reuben Taub and Hindy Taub

DVP Global Trading, L.L.C.

*who are all the parties named in said action, a judgment was entered on* November 9, 2009 *in favor of* Reuben Taub and Hindy Taub *and against* DVP Global Trading, LLC *whose last known address is* 130 West 42nd Street, New York, New York *in the amount of $* 1,123,753.22 *including costs, of which $* 1,123,753.22 *interest thereon from* November 9, 2009 *remains due and unpaid;*

*as plaintiffs* and *as defendant*

*judgment creditor*
*judgment debtor*

*together with*

NOW, THEREFORE, WE COMMAND YOU *to satisfy the said judgment out of the personal property of the above named judgment debtor and the debts due to him; and that only the property in which said judgment debtor who is not deceased has an interest or the debts owed to him shall be levied upon or sold hereunder; AND TO RETURN this execution to the clerk of the above captioned court within 60 days after issuance unless service of this execution is made within that time or within extensions of that time made in writing by the attorney(s) for the judgment creditor*

**Notice to Garnishee** TO: IRA DANIEL TOKAYER, Esq.
ADDRESS: 42 West 38th Street, Suite 801, New York, NY 10018

WHEREAS, *it appears that you are indebted to the judgment debtor, above named, or in possession or custody of property not capable of delivery in which the judgment debtor has an interest, including, without limitation, the following specified debt and property:*

funds held in escrow for the benefit of DVP Global Trading, LLC.

NOW, THEREFORE, YOU ARE REQUIRED *by section 5232(a) of the Civil Practice Law and Rules forthwith to transfer to the said sheriff or marshal all personal property not capable of delivery in which the judgment debtor is known or believed to have an interest now in or hereafter coming into your possession or custody including any property specified in this notice; and to pay to the said sheriff or marshal, upon maturity, all debts now due or hereafter coming due from you to the judgment debtor, including any debts specified in this notice; and to execute any documents necessary to effect such transfer or payment;*

AND TAKE NOTICE *that until such transfer or payment is made or until the expiration of 90 days after service of this execution upon you or such further time as is provided by any order of the court served upon you whichever event first occurs, you are forbidden to make or suffer any sale, assignment or transfer of, or any interference with, any such property, or pay over or otherwise dispose of any such debt, to any person other than said sheriff or marshal, except upon direction of said sheriff or marshal or pursuant to an order of the court;*

AND TAKE FURTHER NOTICE THAT *at the expiration of 90 days after a levy is made by service of this execution, or of such further time as the court upon motion of the judgment creditor has provided, this levy shall be void except as to property or debts which have been transferred or paid to said sheriff or marshal or as to which a proceeding under sections 5225 or 5227 of the Civil Practice Law and Rules has been brought.*

*Dated:* November 10, 2009

Daniel M. Hartman

~~Daniel M. Hartman~~ Esq.
*The name signed must be printed beneath.*

*Attorney(s) for Judgment Creditor*
*Office and Post Office Address*

Daniel M. Hartman, Esq.
489 Fifth Avenue, 28th Floor
New York, New York 10017
212-986-8600

*A notice to judgment debtor in the form prescribed by CPLR 5222(e) — HAS — HAS NOT — been served on judgment debtor within a year.*



# NEW YORK CITY MARSHAL
## Stephen W. Biegel

109 West 38th Street, Suite 200 • New York, NY 10018
Phone: (212) MARSHAL (627-7425) • Fax: (212) 398-2000
MarshalBiegel@aol.com • www.NewYorkCityMarshal.com

## LEVY AND DEMAND ON

November 10, 2009

IRA DANIEL TOKAYER, ESQ.
42 W 38TH STREET SUITE 801
NEW YORK NY 10018

**JUDGMENT CREDITOR**
REUBEN TAUB AND HINDY TAUB

VS

DVP GLOBAL TRADING, LLC
**JUDGMENT DEBTOR**

GREETINGS:

Attached you will find a Property Execution with Notice to Garnishee. As directed under **CPLR §5232(a)**, you are required to turn over to me all property of the judgment debtor currently in your possession or custody, not to exceed the following amount:

| | |
|---|---|
| Judgment. . . . . . . . . . | $1,123,753.22 |
| Interest. . . . . . . . . | $277.57 |
| Statutory Fees. . . . . . . | $15.00 |
| Expense . . . . . . . . . . | $0.00 |
| Poundage. . . . . . . . . . | $56,202.28 |
| **TOTAL** | **$1,180,248.07** |

Should you have any questions, kindly contact my office.

**MARSHAL'S DOCKET # E 3836**

Very truly yours,

STEPHEN W. BIEGEL
Marshal City of New York
Badge #27

SIGNATURE OF OFFICIAL ACCEPTING LEVY: _____

PRINTED NAME: _Ira Daniel Tokayer_ DATE: _11/11/09_

(BANKATTR)

EXHIBIT B

## SETTLEMENT AGREEMENT

This Agreement, entered into and effective as of ~~October~~ _____, 2007, by and among Hayim Regensberg ("Regensberg"), having an address at 845 West End Avenue, New York, N.Y.; DVP Global Trading LLC ("DVP"), having an address at 845 West End Avenue, New York, N.Y.; Daniel Ellen, Carlin Owners Corp, f/k/a Carlin Equities Corp. ("Carlin"), having an address at 666 Third Avenue, New York, NY; Generic Trading Of Philadelphia LLC ("Generic"), having an address at 666 Third Avenue, New York, NY; Shear Trading Partners, Inc. f/k/a Shear Offman Inc. ("Shear Offman") having an address at 666 Third Avenue, New York, NY; Ronald Shear ("Shear"), having an address at 666 Third Avenue, New York, NY; and Donald Motschwiller ("Motschwiller"), having an address at c/o First New York Securities LLC, 90 Park Avenue, New York, N.Y.

WHEREAS, Regensberg commenced an action against Carlin, Generic, Shear Offman, Shear and Motschwiller (collectively Carlin, Generic, Shear Offman, Shear and Motschwiller are referred to as the "Defendants") in New York Supreme Court, New York County entitled "Hayim A. Regensberg v. Generic Trading of Philadelphia LLC Carlin Equities Corp., Shear Offman, Inc., Ronald Shear and Donald Motschwiller (index No. 111582/2003)" ("Litigation 1"); DVP subsequently became an additional plaintiff in Litigation 1 and Litigation 1 was amended to be entitled "Hayim A. Regensberg and DVP Global Trading LLC v. Generic Trading of Philadelphia LLC, Carlin Equities Corp., Shear Offman, Inc., Ronald Shear and Donald Motschwiller;" Carlin and Generic asserted counterclaims and third party claims in Litigation 1 against Regensberg and Daniel Ellen ("Ellen"); and

WHEREAS DVP commenced a subsequent litigation against Defendants in New York Supreme Court, New York, County, entitled "DVP Global Trading LLC v. Generic Trading of Philadelphia LLC, Carlin Equities Corp., Shear Offman, Inc., Ronald Shear and Donald Motschwiller (Index No. 600615/2006) ("Litigation 2"); and

WHEREAS, Ellen commenced a litigation entitled "Daniel Ellen v. Generic Trading of Philadelphia LLC and Carlin Equities Corp." (Index No. 104051/2002) (Litigation 3"); and

WHEREAS, Regensberg, DVP, and the Defendants wish to resolve the claims, counterclaims and third party claims asserted in Litigation 1, Litigation 2 and Litigation 3 without the necessity of further proceedings, no party admitting liability to any other party;;

NOW, THEREFORE, in consideration of the mutual promises and covenants set forth below, Regensberg, DVP, Carlin, Generic, Shear Offman, Shear, Motschwiller, and Ellen agree to settle Litigation 1, Litigation 2 and Litigation 3 on the following terms and conditions:

1

1. In full settlement of all claims asserted against Defendants in Litigations 1, Litigation 2 and Litigation 3, within five (5) business days after Carlin's receipt of this Agreement, fully and originally executed by Regensberg, DVP and Ellen before a notary public, together with all originally executed and notarized documents described in paragraphs 2,3 and 6, lead defendant Carlin shall pay DVP the sum of $485,000.00 (the "Settlement Sum") by delivering a check to Ira Tokayer, Esq., payable to Ira Tokayer, Esq., as Attorney for DVP Global Trading LLC.

2. As a precondition to the payment set forth in paragraph no. 1, Ellen, DVP and Regensberg shall each respectively execute and deliver notarized General Releases in the form annexed hereto as Exhibit A and shall DVP and Regensberg also cause notarized General Releases to be executed and delivered by Renee Baruch Regensberg and Eric Rothner. All General Releases called for by this paragraph shall be held in escrow by, Bingham McCutchen until such time as Defendants execute and deliver the General Releases required by paragraph no. 3 and pay the Settlement Sum as set forth above.

3. Simultaneous with their execution of this Agreement, Carlin, Generic, Shear Offman, Shear and Motschwiller shall each respectively execute General Releases in favor of the DVP, Regensberg and Ellen, in the form collectively annexed hereto as Exhibit B (collectively, these releases are refereed to as the "Defendants' Releases").

4. As an inducement to Carlin, Generic, Shear Offman, Shear and Motschwiller to settle Litigation 1, Litigation 2 and Litigation 3 and enter into this Agreement,

    (a) Regensberg represents and warrants that he shall personally have received consideration for this Agreement, the receipt and adequacy of Regensberg acknowledges, by, without limitation, Carlin's payment of the Settlement Sum and the delivery by Defendants of a Release in Regensberg's favor.

    (b) DVP and Regensberg hereby jointly and severally indemnify and hold each of the Defendants (and all persons and entities identified in the General Releases required by this Agreement) harmless with respect to any claims, demands, causes of action, complaints, and/or allegations made against any of them in any proceeding with respect, arising out of, or related to (i) any account or sub-account at Carlin and/or Generic through which Regensberg and/or DVP and/or the affiliates of either Regensberg and DVP traded; or (ii) any claim, demand, cause of action or complaint asserted by Renee Regensberg, Daniel Ellen, Hindy Taub, Reuben Taub, Eric Rothner or any other person or entity (including any claims, demands, causes of action or complaints

2

asserted by the respective heirs, successors and assigns of the foregoing persons or entities) who contributed or loaned monies to DVP or traded through any account or sub-account at Carlin and/or Generic (iii) any claim, demand, cause of action asserted against any of the Defendants or their successors, heirs, affiliates or assigns arising out of or related to the breach of any of DVP's or Regensberg's representations or warranties in this Agreement or any documents delivered to any of the Defendants pursuant to it. Such indemnification shall include the payment of all costs, expenses, and legal fees incurred by any of the Defendants in connection with the assertion of any claims, causes of action or complaints against any of the Defendants (as well as against any persons or entities released in any General Release required by this Agreement), upon demand by any of the indemnified Defendants.

(c) Regensberg and DVP jointly and severally represent and warrant that Regensberg is the managing member of DVP is as such, has full power and authority to execute this agreement and all documents required to be executed pursuant to this Agreement. This Agreement and each of the documents executed any person or entity on behalf of DVP shall be binding and effective upon DVP and each of its successors, and assigns.

(d) Regensberg and DVP represent and warrant that they neither of them has assigned or transferred any purported claim against any Defendant.

5. This Agreement shall be binding upon the parties, and to the extent applicable, their respective, members, officers, directors, employees, heirs, executors, administrators, successors, assigns, agents, attorneys and representatives, and in the case of corporate parties, also to the parents, subsidiaries and affiliates of all such parties.

6. Simultaneous with the execution of this Agreement, the parties shall execute Stipulations of Discontinuance, discontinuing with prejudice all pending litigation between or among any of the parties including, but not limited to, Litigation 1, Litigation 2 and Litigation 3 in the form annexed hereto as Exhibit C. Each party shall bear its own costs and attorneys' fees. Upon payment of the Settlement Sum and the exchange of all documents required by this Agreement, including the Stipulations of Discontinuance called for by this paragraph (which, executed by counsel for Regensberg, DVP and Ellen shall be delivered to Bingham McCutchen, LLP, att'n: Ted Poretz, Esq.) Defendants shall file the Stipulations of Discontinuance with the Clerk of the Supreme Court without further notice to any other party.

7. The parties acknowledge that this Agreement represents a settlement and compromise of disputed claims. DVP, Regensberg and Ellen acknowledge

3

that by entering into this Agreement and the documents required thereby Defendants have not admitted any liability, wrongdoing, or violation of any statute, or rule or regulation of any regulatory or self-regulatory organization, all of which Defendants expressly deny.

8. As an express precondition to Defendants' obligation to pay the Settlement Amount, Regensberg, DVP and Ellen shall return all documents received in discovery from Defendants, or from any third party, irrespective of how received, within ten (10) days of the execution of this Agreement, representing in writing that they have not kept or maintained any copies thereof in their possession, custody or control, and have provided no copies of any such documents to third parties.

9. The parties acknowledge that each has been represented by counsel of each party's choice throughout the pendency of this action. The parties agree that in any dispute as to the construction of any term of this Agreement or any of the Settlement Documents, the same shall not be construed as against any party on the basis that such party was the drafter of the provision at issue.

10. This Agreement may be executed in one or more counterparts, all of which collectively, shall constitute one integrated agreement.

11. This Agreement and all document delivered pursuant to it shall comprise the entire agreement of the parties. No party to this Agreement is relying on any statement, warranty or representation not contained expressly within this Agreement or the documents delivered pursuant to this Agreement. This Agreement and the documents delivered pursuant to it may not be amended, modified, or terminated except in writing, signed by the party against whom such change or modificationis sought to be enforced.

12. This Agreement shall be governed by New York law, and shall be heard in a court of appropriate jurisdiction sitting in the State of New York, County of New York. Each of the parties to this Agreement expressly consent to the jurisdiction of any Court within the City and State of New York to hear and determine any such controversy, and represent and warrant that such court shall have jurisdiction over the person of each of the parties othis agreement, and to any person or entity who executes or delivers any documents pursuant to this Agreement to any of the parties hereto. . The parties agree that in any action to enforce this Agreement, or any portion thereof, service of process addressed to each party at the addresses set forth shall be deemed good and proper service thereof.

IN WITNESS WHEREOF, the parties hereto have executed this Settlement Agreement as of the date first written above,

4

HAYIM A. REGENSBERG,.    Date
individually

DVP GLOBAL TRADING LLC

By _____    _____
     Hayim A. Regensberg      Date
     Managing Member

CARLIN OWNERS CORP.

By_____    _____
     Ronald H. Shear, President    Date

GENERIC TRADING OF PHILADELPHIA LLC

By _____    _____
     Shear Trading Partners, Inc.    Date

SHEAR TRADING PARTNERS INC.

By _____    _____
     Ronald Shear, President    Date

_____    _____

RONALD SHEAR, individually    Date

_____    _____

DONALD MOTSCHWILLER,    Date
individually

_____    4/6/07

DANIEL ELLEN, individually    Date

5

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )

On the ___ day of November, 20074, before me, the undersigned, personally appeared Hayim Regensberg, personally known or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Settlement Agreement and acknowledged to me that he executed the same in his capacity, and that by his signature on the Settlement Agreement, the individual, or the person on behalf of which the individual acted, executed the Settlement Agreement.
New York, New York.

                                          _____
                                                  Notary Public


STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK)

On the ___ day of November, 2007, before me, the undersigned, personally appeared Hayim A. Regensberg, personally known or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Settlement Agreement and acknowledged to me that he executed the same in his capacity as managing member of DVP Global Trading LLC, and that by his signature on the Settlement Agreement the individual, or the entity on behalf of which the individual acted, executed the Settlement Agreement.

New York, New York.

                                          _____
                                                  Notary Public


STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )


          On the _____ day of November, 2007, before me personally appeared Ronald H. Shear, to me known and known to me to be the President of Carlin Owners Corp., and that he executed the foregoing Settlement Agreement; that the execution of this Settlement Agreement is authorized by Carlin Owners Corp., and he acknowledged to me that he executed the same in the name and on behalf of said entity, being duly authorized.

New York, New York

                                          _____
                                                  Notary Public


6

STATE OF NEW YORK    )
                          ) ss.:
COUNTY OF NEW YORK  )

On the 6th day of November, 2007, before me personally appeared Ronald H. Shear, to me known and known to me to be the President of Shear Trading Partners, Inc. f/k/a Shear Offman, Inc., and that he executed the foregoing Settlement Agreement; that the execution of this Settlement Agreement is authorized by Shear Trading Partners, Inc.., and he acknowledged to me that he executed the same in the name and on behalf of said entity, being duly authorized.

New York, New York

Q. Moskowitz
Avrham C. Moskowitz
Notary Public, State of New York
No. 02MO6134521
Qualified in Nassau County
Commission Expires October 3, 2009

STATE OF NEW YORK    )
                          ) ss.:
COUNTY OF NEW YORK  )

On the _____ day of November, 2007, before me personally appeared Ronald H. Shear, to me known and known to me to be the President of Shear Trading Partners, Inc. f/k/a Shear Offman, Inc., as Managing Member of Generic Trading of Philadelphia, LLC and that he executed the foregoing Settlement Agreement; that the execution of this Settlement Agreement is authorized by Shear Trading Partners, Inc.. on behalf of Generic Trading of Philadelphia, LLC, and he acknowledged to me that he executed the same in the name and on behalf of said entity, being duly authorized.

New York, New York

_____
Notary Public

STATE OF NEW YORK     )
                          ) ss.:
COUNTY OF NEW YORK   )

On the 9th day of November, 20074, before me, the undersigned, personally appeared Daniel Ellen, personally known or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Settlement Agreement and acknowledged to me that he executed the same in his capacity, and that by his signature on the Settlement Agreement, the individual, or the person on behalf of which the individual acted, executed the Settlement Agreement.

New York, New York.

Avrham C. Moskowitz   Avrham C. Moskowitz
Notary Public, State of New York
No. 02MO6134521
Qualified in Nassau County
Commission Expires October 3, 2009

\V72295751 1

## SETTLEMENT AGREEMENT

This Agreement, entered into and effective as of ~~October~~ November _, 2007, by and among Hayim Regensberg ("Regensberg"), having an address at 845 West End Avenue, New York, N.Y.; DVP Global Trading LLC ("DVP"), having an address at 845 West End Avenue, New York, N.Y.; Daniel Ellen, Carlin Owners Corp, f/k/a Carlin Equities Corp. ("Carlin"), having an address at 666 Third Avenue, New York, NY; Generic Trading Of Philadelphia LLC ("Generic"), having an address at 666 Third Avenue, New York, NY; Shear Trading Partners, Inc. f/k/a Shear Offman Inc. ("Shear Offman") having an address at 666 Third Avenue, New York, NY; Ronald Shear ("Shear"), having an address at 666 Third Avenue, New York, NY; and Donald Motschwiller ("Motschwiller"), having an address at c/o First New York Securities LLC, 90 Park Avenue, New York, N.Y.

**WHEREAS**, Regensberg commenced an action against Carlin, Generic, Shear Offman, Shear and Motschwiller (collectively Carlin, Generic, Shear Offman, Shear and Motschwiller are referred to as the "Defendants") in New York Supreme Court, New York County entitled "Hayim A. Regensberg v. Generic Trading of Philadelphia LLC Carlin Equities Corp., Shear Offman, Inc., Ronald Shear and Donald Motschwiller (index No. 111582/2003)" ("Litigation 1"); DVP subsequently became an additional plaintiff in Litigation 1 and Litigation 1 was amended to be entitled "Hayim A. Regensberg and DVP Global Trading LLC v. Generic Trading of Philadelphia LLC, Carlin Equities Corp., Shear Offman, Inc., Ronald Shear and Donald Motschwiller;" Carlin and Generic asserted counterclaims and third party claims in Litigation 1 against Regensberg and Daniel Ellen ("Ellen"); and

**WHEREAS** DVP commenced a subsequent litigation against Defendants in New York Supreme Court, New York, County, entitled "DVP Global Trading LLC v. Generic Trading of Philadelphia LLC, Carlin Equities Corp., Shear Offman, Inc., Ronald Shear and Donald Motschwiller (Index No. 600615/2006) ("Litigation 2"); and

**WHEREAS**, Ellen commenced a litigation entitled "Daniel Ellen v. Generic Trading of Philadelphia LLC and Carlin Equities Corp." (Index No. 104051/2002) (Litigation 3"); and

**WHEREAS**, Regensberg, DVP, and the Defendants wish to resolve the claims, counterclaims and third party claims asserted in Litigation 1, Litigation 2 and Litigation 3 without the necessity of further proceedings, no party admitting liability to any other party;;

**NOW, THEREFORE**, in consideration of the mutual promises and covenants set forth below, Regensberg, DVP, Carlin, Generic, Shear Offman, Shear, Motschwiller, and Ellen agree to settle Litigation 1, Litigation 2 and Litigation 3 on the following terms and conditions:

1

1. In full settlement of all claims asserted against Defendants in Litigations 1, Litigation 2 and Litigation 3, within five (5) business days after Carlin's receipt of this Agreement, fully and originally executed by Regensberg, DVP and Ellen before a notary public, together with all originally executed and notarized documents described in paragraphs 2,3 and 6, lead defendant Carlin shall pay DVP the sum of $485,000.00 (the "Settlement Sum") by delivering a check to Ira Tokayer, Esq., payable to Ira Tokayer, Esq., as Attorney for DVP Global Trading LLC.

2. As a precondition to the payment set forth in paragraph no. 1, Ellen, DVP and Regensberg shall each respectively execute and deliver notarized General Releases in the form annexed hereto as Exhibit A and shall DVP and Regensberg shall also cause notarized General Releases to be executed and delivered by Renee Baruch Regensberg and Eric Rothner. All General Releases called for by this paragraph shall be held in escrow by, Bingham McCutchen until such time as Defendants execute and deliver the General Releases required by paragraph no. 3 and pay the Settlement Sum as set forth above.

3. Simultaneous with their execution of this Agreement, Carlin, Generic, Shear Offman, Shear and Motschwiller shall each respectively execute General Releases in favor of the DVP, Regensberg and Ellen. in the form collectively annexed hereto as Exhibit B (collectively, these releases are refereed to as the "Defendants' Releases").

4. As an inducement to Carlin, Generic, Shear Offman, Shear and Motschwiller to settle Litigation 1. Litigation 2 and Litigation 3 and enter into this Agreement,

   (a) Regensberg represents and warrants that he shall personally have received consideration for this Agreement, the receipt and adequacy of Regensberg acknowledges, by, without limitation, Carlin's payment of the Settlement Sum and the delivery by Defendants of a Release in Regensberg's favor.

   (b) DVP and Regensberg hereby jointly and severally indemnify and hold each of the Defendants (and all persons and entities identified in the General Releases required by this Agreement) harmless with respect to any claims, demands, causes of action, complaints, and/or allegations made against any of them in any proceeding with respect, arising out of, or related to (i) any account or sub-account at Carlin and/or Generic through which Regensberg and/or DVP and/or the affiliates of either Regensberg and DVP traded; or (ii) any claim, demand, cause of action or complaint asserted by Renee Regensberg, Daniel Ellen, Hindy Taub, Reuben Taub, Eric Rothner or any other person or entity (including any claims, demands, causes of action or complaints

2

asserted by the respective heirs, successors and assigns of the foregoing persons or entities) who contributed or loaned monies to DVP or traded through any account or sub-account at Carlin and/or Generic (iii) any claim, demand, cause of action asserted against any of the Defendants or their successors, heirs, affiliates or assigns arising out of or related to the breach of any of DVP's or Regensberg's representations or warranties in this Agreement or any documents delivered to any of the Defendants pursuant to it. Such indemnification shall include the payment of all costs, expenses, and legal fees incurred by any of the Defendants in connection with the assertion of any claims, causes of action or complaints against any of the Defendants (as well as against any persons or entities released in any General Release required by this Agreement), upon demand by any of the indemnified Defendants.

(c) Regensberg and DVP jointly and severally represent and warrant that Regensberg is the managing member of DVP is as such, has full power and authority to execute this agreement and all documents required to be executed pursuant to this Agreement. This Agreement and each of the documents executed any person or entity on behalf of DVP shall be binding and effective upon DVP and each of its successors, and assigns.

(d) Regensberg and DVP represent and warrant that they neither of them has assigned or transferred any purported claim against any Defendant.

5. This Agreement shall be binding upon the parties, and to the extent applicable, their respective, members, officers, directors, employees, heirs, executors, administrators, successors, assigns, agents, attorneys and representatives, and in the case of corporate parties, also to the parents, subsidiaries and affiliates of all such parties.

6. Simultaneous with the execution of this Agreement, the parties shall execute Stipulations of Discontinuance, discontinuing with prejudice all pending litigation between or among any of the parties including, but not limited to, Litigation 1, Litigation 2 and Litigation 3 in the form annexed hereto as Exhibit C. Each party shall bear its own costs and attorneys' fees. Upon payment of the Settlement Sum and the exchange of all documents required by this Agreement, including the Stipulations of Discontinuance called for by this paragraph (which, executed by counsel for Regensberg, DVP and Ellen shall be delivered to Bingham McCutchen, LLP, att'n: Ted Poretz, Esq.) Defendants shall file the Stipulations of Discontinuance with the Clerk of the Supreme Court without further notice to any other party.

7. The parties acknowledge that this Agreement represents a settlement and compromise of disputed claims. DVP, Regensberg and Ellen acknowledge

3

that by entering into this Agreement and the documents required thereby Defendants have not admitted any liability, wrongdoing, or violation of any statute, or rule or regulation of any regulatory or self-regulatory organization, all of which Defendants expressly deny.

8. As an express precondition to Defendants' obligation to pay the Settlement Amount, Regensberg,DVP and Ellen shall return all documents received in discovery from Defendants, or from any third party, irrespective of how received, within ten (10) days of the execution of this Agreement, representing in writing that they have not kept or maintained any copies thereof in their possession, custody or control, and have provided no copies of any such documents to third parties.

9. The parties acknowledge that each has been represented by counsel of each party's choice throughout the pendency of this action. The parties agree that in any dispute as to the construction of any term of this Agreement or any of the Settlement Documents, the same shall not be construed as against any party on the basis that such party was the drafter of the provision at issue.

10. This Agreement may be executed in one or more counterparts, all of which collectively, shall constitute one integrated agreement.

11. This Agreement and all document delivered pursuant to it shall comprise the entire agreement of the parties. No party to this Agreement is relying on any statement, warranty or representation not contained expressly within this Agreement or the documents delivered pursuant to this Agreement. This Agreement and the documents delivered pursuant to it may not be amended, modified, or terminated except in writing, signed by the party against whom such change or modificationis sought to be enforced.

12. This Agreement shall be governed by New York law, and shall be heard in a court of appropriate jurisdiction sitting in the State of New York, County of New York. Each of the parties to this Agreement expressly consent to the jurisdiction of any Court within the City and State of New York to hear and determine any such controversy, and represent and warrant that such court shall have jurisdiction over the person of each of the parties othis agreement, and to any person or entity who executes or delivers any documents pursuant to this Agreement to any of the parties hereto. . The parties agree that in any action to enforce this Agreement, or any portion thereof, service of process addressed to each party at the addresses set forth shall be deemed good and proper service thereof.

IN WITNESS WHEREOF, the parties hereto have executed this Settlement Agreement as of the date first written above,

4

_(signature)_ _11-6-07_
HAYIM A. REGENSBERG,. Date
individually

DVP GLOBAL TRADING LLC

By _(signature)_ _11-6-07_
Hayim A. Regensberg Date
Managing Member

CARLIN OWNERS CORP.

By_____ _____
Ronald H. Shear, President    Date


GENERIC TRADING OF PHILADELPHIA LLC

By _____ _____
Shear Trading Partners, Inc.   Date


SHEAR TRADING PARTNERS INC.

By _____ _____
Ronald Shear, President    Date


_____ _____
RONALD SHEAR, individually    Date


_____ _____
DONALD MOTSCHWILLER,    Date
individually


_____ _____
DANIEL ELLEN, individually    Date


5

STATE OF NEW YORK )
) ss.:
COUNTY OF NEW YORK )

On the 6 day of November, 20004, before me, the undersigned, personally appeared
Hayim Regensberg, personally known or proved to me on the basis of satisfactory
evidence to be the individual whose name is subscribed to the within Settlement
Agreement and acknowledged to me that he executed the same in his capacity, and that
by his signature on the Settlement Agreement, the individual, or the person on behalf of
which the individual acted, executed the Settlement Agreement.
New York, New York.

Notary Public

IRA DANIEL TOKAYER
Notary Public, State of New York
No. 31-4941432
Qualified in New York County
Commission Expires August 15, 1990
12/17/10

STATE OF NEW YORK )
) ss.:
COUNTY OF NEW YORK )

On the 6 day of November, 2007, before me, the undersigned, personally appeared
Hayim A. Regensberg, personally known or proved to me on the basis of satisfactory
evidence to be the individual whose name is subscribed to the within Settlement
Agreement and acknowledged to me that he executed the same in his capacity as
managing member of DVP Global Trading LLC, and that by his signature on the
Settlement Agreement the individual, or the entity on behalf of which the individual
acted, executed the Settlement Agreement.

New York, New York.

Notary Public

IRA DANIEL TOKAYER
Notary Public, State of New York
No. 31-4941432
Qualified in New York County
Commission Expires August 15, 1990
10/17/10

STATE OF NEW YORK )
) ss.:
COUNTY OF NEW YORK )

On the _____ day of November, 2007, before me personally appeared Ronald H.
Shear, to me known and known to me to be the President of Carlin Owners Corp., and
that he executed the foregoing Settlement Agreement; that the execution of this
Settlement Agreement is authorized by Carlin Owners Corp., and he acknowledged to me
that he executed the same in the name and on behalf of said entity, being duly authorized.

New York, New York

Notary Public

6

STATE OF NEW YORK )
                                 ) ss.:
COUNTY OF NEW YORK )

On the ___ day of November, 20074, before me, the undersigned, personally appeared Hayim Regensberg, personally known or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Settlement Agreement and acknowledged to me that he executed the same in his capacity, and that by his signature on the Settlement Agreement, the individual, or the person on behalf of which the individual acted, executed the Settlement Agreement.
New York, New York.

                                                    _____
                                                           Notary Public


STATE OF NEW YORK )
                                 ) ss.:
COUNTY OF NEW YORK)

On the ___ day of November, 2007, before me, the undersigned, personally appeared Hayim A. Regensberg, personally known or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Settlement Agreement and acknowledged to me that he executed the same in his capacity as managing member of DVP Global Trading LLC, and that by his signature on the Settlement Agreement the individual, or the entity on behalf of which the individual acted, executed the Settlement Agreement.

New York, New York.

                                                    _____
                                                           Notary Public


STATE OF NEW YORK )
                                 ) ss.:
COUNTY OF NEW YORK )


        On the _____ day of November, 2007, before me personally appeared Ronald H. Shear, to me known and known to me to be the President of Carlin Owners Corp., and that he executed the foregoing Settlement Agreement; that the execution of this Settlement Agreement is authorized by Carlin Owners Corp., and he acknowledged to me that he executed the same in the name and on behalf of said entity, being duly authorized.

New York, New York

                                                    _____
                                                           Notary Public


6

STATE OF NEW YORK  )
                   ) ss.:
COUNTY OF NEW YORK )


On the _____ day of November, 2007, before me personally appeared Ronald H. Shear, to me known and known to me to be the President of Shear Trading Partners, Inc. f/k/a Shear Offman, Inc., and that he executed the foregoing Settlement Agreement; that the execution of this Settlement Agreement is authorized by Shear Trading Partners, Inc.., and he acknowledged to me that he executed the same in the name and on behalf of said entity, being duly authorized.

New York, New York

_____
                                                Notary Public

STATE OF NEW YORK  )
                   ) ss.:
COUNTY OF NEW YORK )


On the _____ day of November, 2007, before me personally appeared Ronald H. Shear, to me known and known to me to be the President of Shear Trading Partners, Inc. f/k/a Shear Offman, Inc., as Managing Member of Generic Trading of Philadelphia, LLC and that he executed the foregoing Settlement Agreement; that the execution of this Settlement Agreement is authorized by Shear Trading Partners, Inc.. on behalf of Generic Trading of Philadelphia, LLC, and he acknowledged to me that he executed the same in the name and on behalf of said entity, being duly authorized.

New York, New York

_____
                                                Notary Public

STATE OF NEW YORK     )
                      ) ss.:
COUNTY OF NEW YORK    )


On the ___ day of November, 20074, before me, the undersigned, personally appeared Daniel Ellen, personally known or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Settlement Agreement and acknowledged to me that he executed the same in his capacity, and that by his signature on the Settlement Agreement, the individual, or the person on behalf of which the individual acted, executed the Settlement Agreement.

New York, New York.

7

_____
Notary Public

STATE OF NEW YORK            )
                             ) ss.:
COUNTY OF NEW YORK           )

On the ___ day of November, 20074, before me, the undersigned, personally appeared Ronald Shear, personally known or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Settlement Agreement and acknowledged to me that he executed the same in his capacity, and that by his signature on the Settlement Agreement, the individual, or the person on behalf of which the individual acted, executed the Settlement Agreement.
New York, New York.

_____
Notary Public

STATE OF NEW YORK            )
                             ) ss.:
COUNTY OF NEW YORK           )

On the ___ day of November, 20074, before me, the undersigned, personally appeared Donald Motschwiller, personally known or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Settlement Agreement and acknowledged to me that he executed the same in his capacity, and that by his signature on the Settlement Agreement, the individual, or the person on behalf of which the individual acted, executed the Settlement Agreement.
New York, New York.

_____
Notary Public

8

EXHIBIT C

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re:                                          Chapter 7

Arbco Capital Management, LLP,                  Case No. 07- 13283 (ALG)

                              Debtor.           Hon. Allan L. Gropper

------------------------------------------------------------x

Richard O'Connell, as chapter 7 Trustee of the
estate of Arbco Capital Management, LLP,

                              Plaintiff,

          - against-                            Adv. Pro. No.

Hayim Regensberg, DVP Global Trading
LLP and Ira D. Tokayer, Esq. as Escrow
Agent,

                              Defendants.

------------------------------------------------------------x

## COMPLAINT

The Plaintiff herein, Richard O'Connell, ( "Plaintiff"), in his capacity as

Chapter 7 trustee of the estate of Arbco Capital Management, LLP ("Arbco"), by his

attorneys, Goldberg Weprin Finkel Goldstein LLP, as and for his complaint, respectfully

sets forth and represents as follows:

## JURISDICTION AND VENUE

1.     This adversary proceeding is brought pursuant to Sections 541, 542,

548 and 550 of Title 11 of the United States Code (the "Bankruptcy Code") and Rule

7001(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to

obtain a judgment directing a turnover and surrender of certain proceeds described herein currently being held by Defendant Ira D. Tokayer, Esq. as escrow agent.

2. This Court has jurisdiction over this adversary proceeding by virtue of 28 U.S.C. §§ 157 (a) and (b), 1334 (b), and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court.

3. This is a core proceeding under 28 U.S.C. § 157(b)(2)(E), (H) and (O).

4. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

## PARTIES

5. This bankruptcy case was commenced by the filing of an involuntary petition against Arbco on October 19, 2007 (the "Petition Date"). Thereafter, an Order for Relief was entered on November 26, 2007 under Chapter 7 of Title 11 of the Bankruptcy Code. Plaintiff was subsequently appointed interim trustee and has since qualified as the permanent trustee herein.

6. Defendant Hayim Regensberg ("Regensberg") was the managing partner of Arbco, and was primarily responsible for its operations. He is currently incarcerated in the Federal penal system.

7. Upon information and belief, Defendant DVP Global Trading LLP is a New York limited partnership owned and controlled by Regensberg, in whole or part.

8. Defendant Ira D. Tokayer, Esq. is an attorney at law duly admitted to practice in New York, with offices at 42 W 38th Street, Room 802, New York, NY 10018-0064 and is named as an escrow holder without any personal liability.

## BACKGROUND FACTS

9.    Prior to bankruptcy, Arbco was purportedly engaged in the business of providing financial and investment services.

10.    Upon information and belief, Regensberg is and was also the owner and managing member of Midwest Trading LLC ("Midwest"), which was an affiliate, alter ego and/or predecessor in interest to the Arbco.

11.    Upon information and belief, Regensberg freely intermingled the assets of Arbco and Midwest; failed to maintain separate employees, business offices and accounts; and otherwise ignored the corporate formalities between the two entities.

12.    The businesses of Arbco and Midwest were integrated and were effectively one and the same, such that creditors and investors dealt with Arbco and Midwest as a single economic unit and did not treat them as having separate identities.

13.    Moreover, due to the nature of the Ponzi scheme, the affairs of Arbco and Midwest are so entangled that consolidation will benefit all creditors.

14.    Consequently, monies disbursed by Midwest during relevant times in question are recoverable by Arbco's bankruptcy estate. Both Arbco and Midwest should be deemed substantively consolidated, to constitute a single bankruptcy estate for the purposes of this adversary proceeding. Thus, Arbco and Midwest are hereinafter collectively and interchangeably referred to as the "Debtor."

15.    After the commencement of this bankruptcy case and entry of the Order for Relief, Regensberg was found guilty following a jury trial of securities fraud

and wire fraud in connection with the theft of more than $10 million through willful misrepresentation about two investment scams he perpetrated through the Debtor.

16.     By decision dated June 29, 2009, Regensberg was sentenced to serve 100 months in jail by the Hon. Victor Marrero of the U.S. District Court for the Southern District of New York.

17.     Regensberg operated two different frauds. In one, he informed investors that he was able to obtain initial public offering stock in various companies listed on international exchanges. In the second, he claimed to be loaning monies to trading firms to be used as collateral for leveraged investments.

18.     In reality, Regensberg likely operated a "Ponzi" style scheme and misappropriated various funds. Once his scheme began to unravel, he took steps to hide his illegal conduct by such measures as producing false bank statements to reflect more than $9,000,000 on deposit, when in fact the balance in the bank was only $9,000.

19.     With the criminal proceedings now over, the Trustee has obtained certain documents and financial records from the United States Attorney, and is commencing a number of avoidance actions and other litigations.

## THE LITIGATION PROCEEDS

20.     Upon information and belief, Defendant Ira D. Tokayer, Esq., as attorney at law, represented Defendants Hayim Regensberg and DVP Global Trading, LLC in certain litigation against General Trading of Philadelphia and others in the Supreme Court of the State of New York, New York County under Index No. 111582-2003 (the "Litigation").

4

21.     The Litigation, directly or indirectly, implicates rights, interests and claims which rightfully and equitably belong to the Debtor and the Debtor's estate.

22.     Alternatively, even if the Litigation involves rights, interests and claims unrelated to the Debtor, Regensberg's interest in the Litigation should be forfeited to Plaintiff by virtue of his subsequent fraud and other wrongdoing.

23.     Upon information and belief, Defendants Hayim Regensberg and DVP Global Trading, LLC settled the Litigation for the sum of $450,000.

24.     Upon information and belief, the proceeds of the settlement are being held and retained by Defendant Ira D. Tokayer as escrow holder (the "Litigation Proceeds").

## AS AND FOR A FIRST CAUSE OF ACTION
(11 U.S.C. §§ 541 and 542)

25.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "24" above, as if fully set forth herein.

26.     The Litigation Proceeds rightfully constitute property of the Debtor's estate, to be administered by the Plaintiff, pursuant to Section 541 of the Bankruptcy Code.

27.     Defendant Ira D. Tokayer, Esq. is a custodian of property belonging to the Debtor's bankruptcy estate, as that term is used in Section 543 of the Bankruptcy Code.

28. By reason of the foregoing, Plaintiff is entitled to a judgment directing Defendant Ira D. Tokayer, Esq. to turnover the Litigation Proceeds pursuant to Sections 542 and 543 of the Bankruptcy Code free of the potential adverse claims.

**WHEREFORE**, Plaintiff demands judgment directing a turnover of the Litigation Proceeds, together with accrued interest and costs of this action.

Dated: New York, New York
      October 15, 2009

**GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP**
Attorneys for Plaintiff Richard O'Connell
1501 Broadway, 22nd Floor
New York, New York 10036
(212) 221-5700

By: _____
       Kevin J. Nash, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

In re:                                                                Chapter 7

Arbco Capital Management, LLP,                                        Case No. 07- 13283 (ALG)

                                          Debtor.                     Hon. Allan L. Gropper

-------------------------------------------------------------------x

Richard O'Connell, as chapter 7 Trustee of the
estate of Arbco Capital Management, LLP,

                                          Plaintiff,

            - against-                                                Adv. Pro. No.

Hayim Regensberg,

                                          Defendant.

-------------------------------------------------------------------x

## COMPLAINT

The Plaintiff herein, Richard O'Connell, ( "Plaintiff"), in his capacity as

Chapter 7 trustee of the estate of Arbco Capital Management, LLP ("Arbco"), by his

attorneys, Goldberg Weprin Finkel Goldstein LLP, as and for his complaint, respectfully

sets forth and represents as follows:

## JURISDICTION AND VENUE

1.      This adversary proceeding is brought pursuant to Sections 541, 542,

544, 547, 548 and 550 of Title 11 of the United States Code (the "Bankruptcy Code");

Sections 273, 274, 275, 276(a), 278 and 279 of the New York Debtor and Creditor Law;

and Rule 7001(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") in order to obtain a judgment against Hayim Regensberg ("Regensberg" or the

"Defendant") for avoidance and recovery of certain preferential transfers and/or fraudulent conveyances and turnover of property.

      2.     This Court has jurisdiction over this adversary proceeding by virtue of 28 U.S.C. §§ 157 (a) and (b), 1334 (b), and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court.

      3.     This is a core proceeding under 28 U.S.C. § 157(b)(2)(E), (F), (H) and (O).

      4.     Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

## PARTIES

      5.     This bankruptcy case was commenced by the filing of an involuntary petition against Arbco on October 19, 2007 (the "Petition Date"). Thereafter, an Order for Relief was entered on November 26, 2007 under Chapter 7 of Title 11 of the Bankruptcy Code. Plaintiff was subsequently appointed interim trustee and has since qualified as the permanent trustee herein.

      6.     Defendant is currently incarcerated in the Federal penal system.

## BACKGROUND FACTS

      7.     Prior to bankruptcy, Arbco was purportedly engaged in the business of providing financial and investment services. Regensberg was the managing partner of Arbco, and primarily responsible for its operations.

      8.     Upon information and belief, Regensberg is and was also the owner and managing member of Midwest Trading LLC ("Midwest"), which was an affiliate, alter ego and/or predecessor in interest to the Arbco.

9. Upon information and belief, Regensberg freely intermingled the assets of Arbco and Midwest; failed to maintain separate employees, business offices and accounts; and otherwise ignored the corporate formalities between the two entities.

10. The businesses of Arbco and Midwest were integrated and were effectively one and the same, such that creditors and investors dealt with Arbco and Midwest as a single economic unit and did not treat them as having separate identities.

11. Moreover, due to the nature of the Ponzi scheme, the affairs of Arbco and Midwest are so entangled that consolidation will benefit all creditors.

12. Consequently, monies disbursed by Midwest during relevant times in question are recoverable by Arbco's bankruptcy estate. Both Arbco and Midwest should be deemed substantively consolidated, to constitute a single bankruptcy estate for the purposes of this adversary proceeding. Thus, Arbco and Midwest are hereinafter collectively and interchangeably referred to as the "Debtor."

13. After the commencement of this bankruptcy case and entry of the Order for Relief, Regensberg was found guilty following a jury trial of securities fraud and wire fraud in connection with the theft of more than $10 million through willful misrepresentation about two investment scams he perpetrated through the Debtor.

14. By decision dated June 29, 2009, Regensberg was sentenced to serve 100 months in jail by the Hon. Victor Marrero of the U.S. District Court for the Southern District of New York.

15. Regensberg operated two different frauds. In one, he informed investors that he was able to obtain initial public offering stock in various companies

listed on international exchanges. In the second, he claimed to be loaning monies to trading firms to be used as collateral for leveraged investments.

16. In reality, Regensberg likely operated a "Ponzi" style scheme and misappropriated various funds. Once his scheme began to unravel, he took steps to hide his illegal conduct by such measures as producing false bank statements to reflect more than $9,000,000 on deposit, when in fact the balance in the bank was only $9,000.

17. With the criminal proceedings now over, the Trustee has obtained certain documents and financial records from the United States Attorney, and is commencing a number of avoidance actions and other litigations.

18. Upon information and belief, Regensberg diverted funds and other monies and property otherwise rightfully belonging to the Debtor to himself.

## AS AND FOR A FIRST CAUSE OF ACTION
(Fraud)

19. Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "18" above, as if fully set forth herein.

20. Defendant's criminal conviction for operating a fraudulent Ponzi scheme is entitled to collateral estoppel and res judicata effect for purposes of these bankruptcy proceedings.

21. The Ponzi scheme had the intent, effect and purpose of looting the assets and property of the Debtor, for which the Defendant has been found guilty and made subject to a restitution award of $13,400,960.65.

22.    In light of the Defendant's intentional fraud, which looted the Debtor's assets and property, Plaintiff is entitled to a civil judgment against the Defendant in the like amount of $13,400,960.65.

## AS AND FOR A SECOND CAUSE OF ACTION
(11 U.S.C. §§ 547 and 550) (Insider Preferences)

23.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "22" above, as if fully set forth herein.

24.    Within one year period immediately prior to the Petition Date, the Debtor made payments to or for the benefit of the Defendant which are actionable under Section 547 of the Bankruptcy Code, including but not limited to those itemized as follows (collectively, these are the "Preferential Transfers"):

| Party | Date | Transaction Type | Withdrawal/ Debit Amount ($) |
|---|---|---|---|
| Hayim Regensberg | 10/26/2006 | Check # 1043 | 8,000.00 |
| American Express | 10/30/2006 | Electronic Remittance | 544.35 |
| Hayim Regensberg | 11/16/2006 | Check # 1057 | 7,500.00 |
| American Express | 11/30/2006 | Electronic Remittance | 4,049.96 |
| Hayim Regensberg | 12/12/2006 | Check # 1070 | 7,000.00 |
| Hayim Regensberg | 12/28/2006 | Check # 1085 | 7,000.00 |
| American Express | 1/2/2007 | Electronic Remittance | 3,175.96 |
| Hayim Regensberg | 1/12/2007 | Check # 1090 | 7,000.00 |
| American Express | 1/30/2007 | Electronic Remittance | 8,428.08 |
| Hayim Regensberg | 2/9/2007 | Check # 1110 | 8,000.00 |
| Hayim Regensberg | 2/28/2007 | Check # 1105 | 8,000.00 |
| American Express | 3/2/2007 | Electronic Remittance | 6,091.64 |
| American Express | 3/30/2007 | Electronic Remittance | 538.91 |
| Hayim Regensberg | 4/5/2007 | Check # 1144 | 9,000.00 |
| American Express | 4/30/2007 | Electronic Remittance | 181.75 |
| Hayim Regensberg | 5/8/2007 | Check # 1139 | 8,000.00 |
| American Express | 5/30/2007 | Electronic Remittance | 669.23 |
| American Express | 7/2/2007 | Electronic Remittance | 1,822.87 |

| American Express | 7/30/2007 | Electronic Remittance | 1,188.77 |
| American Express | 8/30/2007 | Electronic Remittance | 290.52 |
| Total | | | 96,482.00 |

25.     The Defendant is an insider of the Debtor, as that term is defined in Section 101(31)(B) of the Bankruptcy Code).

26.     Upon information and belief, the Preferential Transfers were made on account of an antecedent debt owed by the Debtor to the Defendant before the Preferential Transfers were made.

27.     The Preferential Transfers were made while the Debtor was insolvent.

28.     Upon information and belief, the Preferential Transfers enabled Defendant to recover more than it would have received if: (i) the case was a case under Chapter 7, (ii) the Preferential Transfers had not been made, and (iii) the Defendant received payment of its debt to the extent provided by the provisions of the Bankruptcy Code.

29.     By reason of the foregoing, the Preferential Transfers are avoidable pursuant to Section 547(b) of the Bankruptcy Code.

30.     Plaintiff is entitled judgment against the Defendant pursuant to Section 550 of the Bankruptcy Code for the full amount of the Preferential Transfers, such amount to be determined at trial, plus applicable interest, and the costs of this action.

## AS AND FOR A THIRD CAUSE OF ACTION
### (11 U.S.C. §§ 541 and 542)

31.  Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "30" above, as if fully set forth herein.

32.  In the two-year period prior to the Petition Date, the Debtor made a series of transfers of money and/or property belonging to the Debtor's estate to or for the benefit of the Defendant, including but not limited to those set forth below (collectively, the "Cash Transfers"):

| Party | Date | Transaction Type | Withdrawal/ Debit Amount ($) |
|---|---|---|---|
| Hayim Regensberg | 11/7/2005 | Check # 1347 | 7,500.00 |
| American Express | 11/29/2005 | Electronic Remittance | 7,980.09 |
| Hayim Regensberg | 12/7/2005 | Check # 1361 | 7,200.00 |
| Hayim Regensberg | 12/23/2005 | Check # 1364 | 3,000.00 |
| Hayim Regensberg | 1/12/2006 | Check # 1382 | 7,800.00 |
| Hayim Regensberg | 1/26/2006 | Check # 8787732 | 120,000.00 |
| Hayim Regensberg | 2/3/2006 | Check # 1394 | 1,800.00 |
| Hayim Regensberg | 2/16/2006 | Check # 1398 | 3,000.00 |
| American Express | 3/1/2006 | Electronic Remittance | 119.70 |
| Hayim Regensberg | 3/7/2006 | Check # 1411 | 5,000.00 |
| American Express | 3/31/2006 | Electronic Remittance | 2,005.97 |
| Hayim Regensberg | 4/26/2006 | Check # 1434 | 6,000.00 |
| American Express | 5/1/2006 | Electronic Remittance | 631.92 |
| Hayim Regensberg | 5/2/2006 | Check # 1438 | 2,000.00 |
| American Express | 5/30/2006 | Electronic Remittance | 641.94 |
| American Express | 6/30/2006 | Electronic Remittance | 1,684.69 |
| American Express | 7/31/2006 | Electronic Remittance | 1,936.49 |
| Hayim Regensberg | 8/4/2006 | Check # 1474 | 2,400.00 |
| American Express | 8/30/2006 | Electronic Remittance | 804.25 |
| Hayim Regensberg | 9/18/2006 | Check # 1021 | 5,000.00 |
| American Express | 10/2/2006 | Electronic Remittance | 671.04 |
| Hayim Regensberg | 10/12/2006 | Check # 1034 | 3,000.00 |
| Hayim Regensberg | 10/26/2006 | Check # 1043 | 8,000.00 |
| American Express | 10/30/2006 | Electronic Remittance | 544.35 |
| Hayim Regensberg | 11/16/2006 | Check # 1057 | 7,500.00 |
| American Express | 11/30/2006 | Electronic Remittance | 4,049.96 |

| | | | |
|---|---|---|---|
| Hayim Regensberg | 12/12/2006 | Check # 1070 | 7,000.00 |
| Hayim Regensberg | 12/28/2006 | Check # 1085 | 7,000.00 |
| American Express | 1/2/2007 | Electronic Remittance | 3,175.96 |
| Hayim Regensberg | 1/12/2007 | Check # 1090 | 7,000.00 |
| American Express | 1/30/2007 | Electronic Remittance | 8,428.08 |
| Hayim Regensberg | 2/9/2007 | Check # 1110 | 8,000.00 |
| Hayim Regensberg | 2/28/2007 | Check # 1105 | 8,000.00 |
| American Express | 3/2/2007 | Electronic Remittance | 6,091.64 |
| American Express | 3/30/2007 | Electronic Remittance | 538.91 |
| Hayim Regensberg | 4/5/2007 | Check # 1144 | 9,000.00 |
| American Express | 4/30/2007 | Electronic Remittance | 181.75 |
| Hayim Regensberg | 5/8/2007 | Check # 1139 | 8,000.00 |
| American Express | 5/30/2007 | Electronic Remittance | 669.23 |
| American Express | 7/2/2007 | Electronic Remittance | 1,822.87 |
| American Express | 7/30/2007 | Electronic Remittance | 1,188.77 |
| American Express | 8/30/2007 | Electronic Remittance | 290.52 |
| Total | | | 286,658.13 |

33.     Upon information and belief, because the Cash Transfers were made in furtherance of a Ponzi Scheme, they effectively belong to the Debtor's estate and should be surrendered and turned over.

34.     Each of the Cash Transfers, rightfully constitute property of the Debtor, to be recovered and administered by the Plaintiff pursuant to Section 541 of the Bankruptcy Code.

35.     As a result, the Trustee is entitled to judgment against the Defendant directing the immediate turnover of the Cash Transfers pursuant to Section 542 of the Bankruptcy Code.

### AS AND FOR A FOURTH CAUSE OF ACTION
(11 U.S.C. §§ 548(a)(1)(A) and 550)

36.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "35" above, as if fully set forth herein.

8

37. Upon information and belief, the Cash Transfers made with actual intent to hinder, delay and defraud some or all of the Debtor's then-existing creditors.

38. By reason of the foregoing, the Cash Transfers are avoidable pursuant to Section 548(a)(1)(A) of the Bankruptcy Code.

39. Plaintiff is entitled judgment against the Defendant pursuant to Section 550 of the Bankruptcy Code for the full amount of the Cash Transfers, such amount to be determined at trial, plus applicable interest, and the costs of this action.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (11 U.S.C. §§ 548(a)(1)(B) and 550)

40. Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "39" above, as if fully set forth herein.

41. Upon information and belief, the Debtor received less than a reasonably equivalent value in exchange for the Cash Transfers.

42. Upon information and belief, at the time of each and every one of the Cash Transfers, the Debtor was insolvent, undercapitalized, or the Debtor intended to incur or believed it would incur debts beyond the Debtor's ability to pay as such debts matured.

43. By reason of the foregoing, the Cash Transfers are avoidable pursuant to Section 548(a)(1)(B) of the Bankruptcy Code.

44. Plaintiff is entitled judgment against the Defendant pursuant to Section 550 of the Bankruptcy Code for the full amount of the Cash Transfers, such amount to be determined at trial, plus applicable interest, and the costs of this action.

## AS AND FOR A SIXTH CAUSE OF ACTION
(11 U.S.C. §§ 544(b) and 550, and New York Debtor and Creditor Law
§§ 273, 276(a), 278 and 279)

45.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "44" above, as if fully set forth herein.

46.     In addition to the Cash Transfers, prior to the two-year period immediately preceding the Petition Date, the Debtor made a series of transfers of money to or for the benefit of the Defendant, which are actionable under the New York Debtor and Creditor law including but not limited to those itemized as follows (collectively, the "Additional Transfers"):

| Party | Date | Transaction Type | Withdrawal/ Debit Amount ($) |
|---|---|---|---|
| Hayim Regensberg | 1/13/2005 | Check # 1177 | 8,000.00 |
| American Express | 1/31/2005 | Electronic Remittance | 1,350.53 |
| American Express | 3/2/2005 | Electronic Remittance | 4,440.29 |
| American Express | 3/31/2005 | Electronic Remittance | 3,782.29 |
| American Express | 5/2/2005 | Electronic Remittance | 3,307.04 |
| Hayim Regensberg | 5/10/2005 | Check # 1238 | 9,000.00 |
| Hayim Regensberg | 5/12/2005 | Check # 1239 | 8,000.00 |
| Hayim Regensberg | 5/19/2005 | Check # 1242 | 8,000.00 |
| Hayim Regensberg | 5/27/2005 | Check # 1257 | 3,000.00 |
| American Express | 5/31/2005 | Electronic Remittance | 1,503.04 |
| Hayim Regensberg | 6/23/2005 | Check # 1274 | 7,000.00 |
| American Express | 6/29/2005 | Electronic Remittance | 2,361.63 |
| Hayim Regensberg | 7/14/2005 | Check # 1276 | 7,000.00 |
| Hayim Regensberg | 7/28/2005 | Check # 1277 | 8,000.00 |
| American Express | 8/1/2005 | Electronic Remittance | 1,852.36 |
| Hayim Regensberg | 8/5/2005 | Check # 1291 | 9,000.00 |
| American Express | 8/26/2005 | Electronic Remittance | 2,231.86 |
| Hayim Regensberg | 9/1/2005 | Check # 1315 | 3,000.00 |
| American Express | 9/29/2005 | Electronic Remittance | 6,819.74 |
| Hayim Regensberg | 10/12/2005 | Check # 1335 | 5,000.00 |
| Total | | | 102,648.78 |

47. Upon information and belief, the Debtor received less than fair consideration in exchange for the Cash Transfers and Additional Transfers.

48. Upon information and belief, at the time of each and every one of the Cash Transfers and Additional Transfers, the Debtor was insolvent or was rendered insolvent by the Cash Transfers and Additional Transfers.

49. Upon information and belief, at the time of each and every one of the Cash Transfers and Additional Transfers, the Debtor had creditors whose claims were matured or which matured later.

50. By reason of the foregoing, the Cash Transfers and Additional Transfers are fraudulent pursuant to Section 273 of the New York Debtor and Creditor Law.

51. By reason of the foregoing, the Cash Transfers and Additional Transfers are avoidable pursuant to Section 544(b) of the Bankruptcy Code.

52. Plaintiff is entitled judgment against the Defendant pursuant to Section 550 of the Bankruptcy Code for the full amount of the Cash Transfers and Additional Transfers, such amount to be determined at trial, plus applicable interest, and the costs of this action.

## AS AND FOR A SEVENTH CAUSE OF ACTION
(11 U.S.C. §§ 544(b) and 550, and New York Debtor and Creditor Law §§ 274, 276(a), 278 and 279)

53. Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "52" above, as if fully set forth herein.

54. Upon information and belief, the Debtor received less than fair consideration in exchange for the Cash Transfers and Additional Transfers.

55. Upon information and belief, at the time of each and every one of the Cash Transfers and Additional Transfers, the Debtor was engaged in business, and the property remaining in the Debtors after the conveyance was unreasonably small capital.

56. Upon information and belief, at the time of each and every one of the Cash Transfers and Additional Transfers, the Debtor had creditors whose claims were matured or which matured later.

57. By reason of the foregoing, the Cash Transfers and Additional Transfers are fraudulent pursuant to Section 274 of the New York Debtor and Creditor Law.

58. By reason of the foregoing, the Cash Transfers and Additional Transfers are avoidable pursuant to Section 544(b) of the Bankruptcy Code.

59. Plaintiff is entitled judgment against the Defendant pursuant to Section 550 of the Bankruptcy Code for the full amount of the Cash Transfers and Additional Transfers, such amount to be determined at trial, plus applicable interest, and the costs of this action.

### AS AND FOR A EIGHTH CAUSE OF ACTION
(11 U.S.C. §§ 544(b) and 550, and New York Debtor and Creditor Law §§ 275, 276(a), 278 and 279)

60. Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "59" above, as if fully set forth herein.

61.     Upon information and belief, the Debtor received less than fair consideration in exchange for the Cash Transfers and Additional Transfers.

62.     Upon information and belief, at the time of each and every one of the Cash Transfers and Additional Transfers, the Debtor intended or believed it would incur debts beyond its ability to pay as they matured.

63.     Upon information and belief, at the time of each and every one of the Cash Transfers and Additional Transfers, the Debtor had creditors whose claims were matured or which matured later.

64.     By reason of the foregoing, the Cash Transfers and Additional Transfers are fraudulent pursuant to Section 275 of the New York Debtor and Creditor Law.

65.     By reason of the foregoing, the Cash Transfers and Additional Transfers are avoidable pursuant to Section 544(b) of the Bankruptcy Code.

66.     Plaintiff is entitled judgment against the Defendant pursuant to Section 550 of the Bankruptcy Code for the full amount of the Cash Transfers and Additional Transfers, such amount to be determined at trial, plus applicable interest, and the costs of this action.

## AS AND FOR A NINTH CAUSE OF ACTION
(11 U.S.C. §§ 544(b) and 550, and New York Debtor and Creditor Law
§§ 276, 276(a), 278 and 279)

67.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "66" above, as if fully set forth herein.

68. Upon information and belief, the Debtor received less than fair consideration in exchange for the Cash Transfers and Additional Transfers.

69. Upon information and belief, each and every one of the Cash Transfers and Additional Transfers was made with actual intent to hinder, delay or defraud either present or future creditors.

70. Upon information and belief, at the time of each and every one of the Cash Transfers and Additional Transfers, the Debtor had creditors whose claims were matured or which matured later.

71. By reason of the foregoing, the Cash Transfers and Additional Transfers are fraudulent pursuant to Section 276 of the New York Debtor and Creditor Law.

72. By reason of the foregoing, the Cash Transfers and Additional Transfers are avoidable pursuant to Section 544(b) of the Bankruptcy Code.

73. Plaintiff is entitled judgment against the Defendant pursuant to Section 550 of the Bankruptcy Code for the full amount of the Cash Transfers and Additional Transfers, such amount to be determined at trial, plus applicable interest, and the costs of this action, including legal fees.

**WHEREFORE**, Plaintiff demands judgment against the Defendant (i) avoiding and setting aside the Preferential Transfers, Cash Transfers and Additional Transfers together with accrued interest; (ii) directing the Defendant to turn over as applicable the Cash Transfers and the Additional Transfers; (iii) awarding judgment in

the sum of $13,400,960.65 on account of the Defendant's fraudulent Ponzi scheme; and

(iv) granting such other and further relief as this Court deems proper.

Dated: New York, New York
      October 15, 2009

                  **GOLDBERG WEPRIN FINKEL**
                  **GOLDSTEIN LLP**
                  Attorneys for Plaintiff Richard O'Connell
                  1501 Broadway, 22nd Floor
                  New York, New York 10036
                  (212) 221-5700

              By: _____
                    Kevin J. Nash, Esq.

Daniel M. Hartman, Esq.
489 Fifth Avenue, 28th Floor
New York, New York 10017
212-986-8600
dhart25@aol.com

Mark Frankel
Backenroth, Frankel and Krinsky
489 Fifth Avenue, 28th Floor
New York, New York 10017
212-593-1100
mfrankel@bfklaw.com

Attorneys for Petitioner


UNITED STATES BANRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re:<br>Reuben Taub and Hindy Taub,<br><br>        Petitioner,<br>   And<br><br>Ira Daniel Tokayer and Richard O'Connell,<br>Chapter 7 bankruptcy trustee of Arbco Capital<br>Management, LLP,<br>        Respondent | Case No.: No. 10 CIV 2399(SCC) |


### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND, TO ABSTAIN AND FOR ATTORNEY'S FEES

DANIEL M. HARTMAN, ESQ.
ATTORNEY FOR PETITIONER TAUB
489 FIFTH AVENUE, 28TH FLOOR
NEW YORK, NEW YORK 10017
212-986-8600

INTRODUCTION…………………………………………………………………….8

PRELIMINARY STATEMENT…………………………………………………..…….8

FACTUAL BACKGROUND………………………………………………………….9

ARGUMENT

POINT I

     TRUSTEE HAS THE BURDEN OF PROVING JURISDICTION
     AND REMOVAL STATUTES ARE STRICTLY CONSTRUED…………………..……11

POINT II

     COURT LACKS SUBJECT MATTER JURISDICTION UNDER
     28 U.S.C. § 1441 BECAUSE NO FEDERAL QUESTION EXISTS………………….....12

POINT III

     THE NOTICE OF REMOVAL FAILS TO SUFFICEINTLY PLEAD
     FACTS THAT SUPPORT THE REMOVAL OF
     THE STATE COURT ACTION……………………………………………………….13

POINT IV

     REMOVAL UNDER 28 U.S.C. §1452 REQUIRES
     JURSIDICTION UNDER  28 U.S.C. §1334………………………………………….14

     THE COURT LACKS JURISDICTION UNDER
     28 U.S.C. § 1334…………………………………………………………………….15

POINT V

     THE REMOVED STATE COURT ACTION IS NOT
     A CORE PROCEEDING UNDER 28 U.S.C. § 157……………………………………19

     THE REMOVED STATE COURT ACTION IS NOT CORE
     UNDER 28 U.S.C. § 157 (B)(2)(E)……………………………………………….....20

     THE REMOVED STATE COURT ACTION IS NOT CORE
     UNDER 28 U.S.C. §§ 157(B)(2)(O) OR 157(B)(2)(A)…………………………………21

POINT VI

        THE REMOVED STATE COURT ACTION IS NOT A
        CORE PROCEEDING UNDER 28 U.S.C. § 157
        AND ABSTENTION IS REQUIRED BY 28 U.S.C. § 1334 (C)(2)
        OR WARRANTED IN THE EXERCISE OF DISCRETION
        UNDER 28 U.S.C. § 1334 (C)(1)..................................................................22

        MANDATORY ABSTENTION IS REQUIRED
        UNDER  28 U.S.C. § 1334 (C)(2)...................................................22

POINT VII

        IF MANDATORY ABSTENTION IS NOT WARRANTED,
        THE COURT SHOULD, IN ITS DISCRETION, ABSTAIN
        FROM HEARING THE REMOVED STATE COURT ACTION
        UNDER 28 U.S.C.§ 1334(C)(1)).................................................................25

POINT VIII

        THE COURT SHOULD AWARD COSTS AND ACTUAL EXPENSES,
        INCLUDING ATTORNEY FEES, INCURRED BY TAUB
        AS A RESULT OF THE TRUSTEE'S REMOVAL OF
        THE STATE COURT ACTION...................................................................28


CONCLUSION.....................................................................................................30

<u>TABLE OF AUTHORITIES</u>

**CASES**

*19 Court St. Assocs.,* 190 B.R. 983 ............................................................................... 17

*Acolyte Elec. Corp. v. N.Y. (In re Acolyte Elec. Corp.),* 69 Bankr. 155 (Bankr. E.D.N.Y. 1986),
   *order aff'd,* WL 47763 (E.D.N.Y. 1987 ……………………………………………19, 20

*Bank Leumi Trust Co. v. Liggett*, 115 A.D.2d 378, 496 N.Y.S.2d 14 (1st Dep't 1985).............. 10

*California Public Employees' Retirement System v. Worldcom, Inc.*, 368 F.3d 86 (2d Cir.. 2004),
   cert. denied 543 U.S. 1080, 125 S. Ct. 862, 160 L. Ed. 2d 824 (2005).................................... 12

*Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987)........................................................................ 13

*Celotex Corp. v. Edwards*, 514 U.S. 300, 115 S. Ct. 1493 (1995) …………………….…….16, 17

*Cent. Vt. Pub. Serv. Corp. v. Herbert*, 2002 Dist. LEXIS 27080,
   2002 WL 32882362 (D. Vt. 2002) ........................................................................................... 25

*Colorado v. Symes*, 286 U.S. 510, 518-19, 52 S. Ct. 635, 76 L. Ed. 1253 (1932) ................ 14, 20

*Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*,
   130 B.R. 405(S.D.N.Y. 1991) ………………………………………………...15, 26, 27

*FDIC v. Hirsch (In re Colonial Realty Co.)*
   980 F. 2d 125 (2d Cir. 1992)…………………………………………..….13, 17, 18, 20, 21, 26

*Hewlett Park Co., v. 1193-1205 East Broadway of Hewlett, Inc., et. al.*,
   32 Misc. 2d 691 (Sp. Ct. 1961) <u>aff'd</u> 17 A.D.2d 736 (1st Dep't 1962). ................................... 10

*In re 610 W. 142 Owners Corp.,* 1999 WL 294995 (S.D.N.Y. May 11, 1999)........................... 26

*In re Ben Cooper, Inc.*, 896 F.2d 1394 (2nd Cir. 1990). ............................................................... 22

*In re Federal-Mogul Global, Inc.*, 300 F.3d 368 (3rd Cir. 2002) .................................................. 18

*In re Holland Industries, Inc.*, 103 B.R. 461 (Bankr. S.D.N.Y. 1989). ................................. 17, 18

*In re New 118th LLC*, 396 B.R. 885 (Bankr. S.D.N.Y. 2008)....................................................... 25

*In re Omar Sharif Amanat*, 338 B.R. 574 (S.D.N.Y. 2005). .................................................. 18, 23

*In re Shirley Duke Assocs.,* 611 F.2d 15 (2d. Cir. 1979). ............................................................. 26

*In re Teligent, Inc.*, 325 B.R. 134, 138 (Bankr. S.D.N.Y. 2005)………………………………11

*In re Ticketplanet.com*, 313 B.R. 46 (Bankr. S.D.N.Y. 2004)...................................................... 11

*In re Shea & Gould*, 198 B.R. 861 (Bankr. S.D.N.Y. 1996) ......................................................... 11

*In re Turner*, 724 F.2d 338 (2d Cir. 1983)..................................................................................... 17

*J. Baranello & Sons, Inc. v. Baharestani(In re J. Baranello & Sons)*,
   149 B.R. 19 (Bankr. E.D.N.Y. 1992) ...................................................................................... 20

*J.T. Moran Financial Corp. v. American Consolidated Financial Corp.*,
   124 B.R. 931(E.D.N.Y. 1991). .......................................................................................... 21, 22

*Joremi Enter., Inc. v. Hershkowitz (In re New 118th LLC)*, 396 B.R. 885 (S.D.N.Y. 2008). ....... 19

*Key Bank U.S.A., N.A. v. First Union National Bank of Florida,*
   234 B.R. 827 (M.D. Fla. 1999) ...................................................................... 12

*Lead I JV, LP v. North Fork Bank*, 401 B.R. 571 (E.D.N.Y. 2009) ...................... 23

*Linardos v. Fortuna,* 157 F.3d 945 (2d Cir. 1998) ............................................... 12

*Mints v. Educational Testing Service,* 99 F.3d 1253 (3d Cir. 1996) ...................... 29

*Morgan Guar. Trust v. Republic of Palau,* 971 F.2d 917 (2d Cir.1992) ............... 29

*Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F3d 436 (2d Cir. 2005) .................... 23, 28

*Northern Pipeline Constr. Co v. Marathon Pipeline Co.,*
   458 U.S. 50, 102 S. Ct. 2858, 73 L.Ed.2d 598 (1982) ................................... 22

*Orion Pictures Corp. v. Showtime Networks, Inc.* (In re Orion Pictures Corp.),
   4 F.3d 1095 (2nd Cir. 1993) ......................................................................... 11

*Osage Exploration Co. v. Smith*, 39 B.R. 966 (Bankr. S.D.N.Y. 1984) ................. 27

*Pacor Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1983) ........................................... 16

*Publicker Indus., Inc. v. United States (In re Cuyahoga Equip.)* 980 F.2d 110 (2d Cir. 1992) ... 16

*Rahl v. Bande,* 316 B.R. 127, 137 (S.D.N.Y. 2004).........................................28

*Rivet v. Regions Bank of Louisiana*, 522 U.S. 470 (1998) ................................. 13

*Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941) ................................ 12

*Shearson v. Wagoner*, 944 F.2d 114 (2d Cir. 1991) ...................................... 16, 26

*Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043 (2d Cir. 1991) ..................... 12, 14

*Stahl v. Stahl*, 2003 U.S. Dist. LEXIS 20112 (S.D.N.Y. 2003)........................... 27

*Stanziale v. Pepper Hamilton, LLP* (In re Student Fin. Corp.),
   335 B.R. 539, 554 (D. Del. 2005) ............................................................... 21

*Steel Workers Pension Trust v. Citigroup, Inc.*, 295 B.R. 747 (E.D.P.A. 2003) ...... 18

*Syngenta Crop Prot., Inc. v. Henson,*
   537 U.S. 28, 123 S. Ct. 366, 154 L. Ed. 2d 368 (2002) ............................... 14

*Township of Whitehall v. Allentown Auto Auction,* 966 F. Supp. 385 (E.D.Pa. 1997)................. 30

*Trs. Of Masonic Hall and Asylum Fund v. Price Waterhousecoopers LLP,*
   2009 U.S. Dist. LEXIS 8953, 2009 WL 290543 (S.D.N.Y. 2009). ......................... 23

*In re Turner,* 724 F.2d 338............................................................................... 17

*Wm. Passalacqua Builders v. Resnick Developers*, 933 F2d 131 (2nd Cir. 1991) ...................... 11

## STATUTES

11 U.S.C. § 101(10) .................................................................................................... 11

11 U.S.C. § 541(a)(3) .................................................................................................. 17

11 U.S.C. § 542 ........................................................................................................... 11

11 U.S.C. § 542(a) ...................................................................................................... 11

28 U.S.C. § 157 ........................................................................................... 19, 20, 21, 22

28 U.S.C. § 157 (b)(2)(A) ..................................................................................... 19, 22

28 U.S.C. § 157 (b)(2)(E) ..................................................................................... 20, 21

28 U.S.C. § 157 (b)(2)(O) ..................................................................................... 21, 22

28 U.S.C. § 157 (b)(3) ................................................................................................ 20

28 U.S.C. § 1334(2) .................................................................................................... 24

28 U.S.C. § 1334 (c)(1) .............................................................................................. 25

28 U.S.C. § 1334 (c)(2) ................................................................................... 22, 23, 25

28 U.S.C. § 1334(a) .................................................................................................... 15

28 U.S.C. § 1334(b) .................................................................................................... 15

28 U.S.C. § 1441 ........................................................................................................ 12

28 U.S.C. § 1441(b). ................................................................................................... 13

28 U.S.C. § 1447(c) .............................................................................................. 12, 29

28 U.S.C. § 1452............................................................................................................12

28 U.S.C. § 1452 (a) ............................................................................................. 14, 27

28 U.S.C. §§ 1447(c) ............................................................................................ 12, 29

Bankruptcy Rule 9027 ......................................................................................... 8, 13, 14

CPLR § 5202(a) .......................................................................................................... 10

CPLR § 5225(b)............................................................................................................10

CPLR § 5227 ............................................................................................................... 10

CPLR  § 5230(b) ......................................................................................................... 10

CPLR § 5232 ............................................................................................................... 10

CPLR § 5239 ............................................................................................................... 10

**TREATISES**

5 Collier on Bankruptcy, ¶542.02[1] (15th ed. 2009)............................................................ 21

Collier on Bankruptcy, ¶3.01[3](c)[i], at 3-14 (15th ed. 2009) .................................... 15

Collier, on Bankruptcy, ¶ 3.01[3][c][v], at 3-30 (15th ed.2009) .................................. 17

Siegel, <u>New York Practice</u>, 4th ed. § 521 ................................................................. 10

# INTRODUCTION

Petitioners, Reuben Taub and Hindy Taub ("Taub") respectfully submit this memorandum of law in support of their motion for an order pursuant to 28 U.S.C. §§ 1452(b), 1337(c)(1), 1337(c)(2), 1447(c) and Bankruptcy Rule 9027, remanding the state court special proceeding commenced by Taub in the Supreme Court of the State of New York, New York County, entitled *Reuben Taub and Hindy Taub, Petitioners v. Ira Daniel Tokayer, Respondent,* Index No. 116878-2009 (the "State Court Action"), assigned to Judge Marcy Friedman, which Richard O'Connell (the "Trustee") removed to this Court on or about March 17, 2010.

Taub also moves to preserve their right to make a motion for costs pursuant to 28 U.S.C. § 1452(c) by asking that in the event the court remands the State Court Action it retains jurisdiction over the issue of an award of costs so Taub can formally move at a later time.

# PRELIMINARY STATEMENT

Taub moves for remand of the removed State Court Action, a New York State turnover special proceeding involving non-bankruptcy debtor parties and non-bankruptcy estate property. The removed State Court Action should be remanded since the notice of removal was defective and the court lacks jurisdiction. (Point I, II).

Not only does the notice of removal fail to allege facts sufficient under Bankruptcy Rule 9027 but the State Court Action may not be properly before this court since the Trustee failed to arrange for entry of the State Court judges decision, as required by the State Court judge, and the Trustee's motion to intervene remains sub judice before the New York State court judge. (Point II).

Furthermore, the removed State Court Action does not implicate federal jurisdiction under 28 U.S.C. § 1334 since the State Court Action is not an action arising under title 11, arising in title 11, and is not related to a case under title 11. (Point IV).

Additionally, the removed State Court Action is not a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), 157(b)(2)(E), or 157(b)(2)(O) as alleged by the Trustee.   As a consequence, under 28 U.S.C. § 1334(c)(2), the removed State Court Action is subject to mandatory abstention by this court as a non-core "related to" case, commenced in state court, which could not have been commenced in federal court and which can be timely adjudicated in a State forum of appropriate jurisdiction. (Point V, VI).

Even if the court determines that mandatory abstention is not warranted, the court should, in its discretion, abstain from hearing the removed State Court Action pursuant to 28 U.S.C. § 1334(c)(1) and remand.  As shown in detail below, the removed State Court Action satisfies the factors considered by the federal courts in the exercise of permissive abstention. (Point VII).

Finally, the Trustee moved to intervene in the State Court Action, giving the state court every impression that it would intervene and present its claims before the state court judge only to file the notice of removal the day before its papers were due in accordance with the State court judge's briefing schedule.  The Trustee is using the notice of removal to forum shop its dubious claims, to unnecessarily delay Taub's rightful claim and require the expenditure of substantial sums to make the instant motion.  The Trustee's claims asserted in the notice to removal are so deficient that an award of attorney's fees is warranted under 28 U.S.C. § 1447(c). (Point VIII).

## FACTUAL BACKGROUND[1]

Taub is a judgment creditor of DVP Global Trading, LLC.("DVP").  (Notice of Removal, Ex. A, Hartman Aff., Ex. A.) Pursuant to New York Civil Practice Law and Rules ("CPLR")  § 5230(b) Taub issued an execution against funds belonging to DVP (the "DVP Funds"), held by DVP's  attorney Ira Daniel Tokayer ("Tokayer") to enforce their New York State judgment against

---

[1]        Taub incorporates all the factual allegations made in the removed State Court Action by reference.

DVP.  The delivery of the execution to the New York City Marshal directing him to satisfy the

petitioner's judgment from the DVP Funds, the personal property of, DVP, made Taub a judgment

lien creditor in the DVP Funds.  (Notice of Removal, Ex. A, Hartman Aff., Ex. B.) When the

execution was delivered to the Marshal, Taub obtained rights in the DVP Funds superior to the

rights of any transferee of the property as *judgment lien creditors*. CPLR § 5202(a); *Hewlett Park*

*Co., v. 1193-1205 East Broadway of Hewlett, Inc., et. al.*, 32 Misc. 2d 691 (Sp. Ct. 1961) aff'd 17

A.D.2d 736 (1st Dep't 1962).  Subsequently, when the Marshal served the execution on Tokayer,

levying against the DVP Funds pursuant to CPLR § 5232, the Taub *perfected their judgment lien*

*in the DVP Funds*.

There is no dispute that Toakyer was properly served with the execution and levy for the

DVP Funds. (Notice of Removal, Ex. B,  Horan Aff.,  ¶¶ 1, 2.)

When Tokayer refused to comply with the execution levied on him by the Marshal, Taub

commenced the State Court Action, a special proceeding under the laws of New York State

pursuant to CPLR §§ 5225(b)  and/or 5227, seeking the turnover of the DVP Funds held by

Tokayer in which Taub had a perfected judgment lien interest.

The Trustee moved pursuant to CPLR § 5239 to intervene in the State Court Action to have

the State court determine the Trustee's adverse claim[2].

The DVP Funds were  paid to Tokayer in settlement of DVP's claims in a New York State

court litigation. Although Regensberg initially brought the action in his name, when it became

apparent that Regesnberg had no individual claim the complaint was amended to add DVP as a

party.  The DVP settlement agreement states that the DVP Funds were paid in settlement of DVP's

---

[2]       The general purpose of CPLR § 5239 is to provide a proceeding to determine the priorities of creditors of
various stripes having diverse *claims of liens* competing with the judgment creditor's lien.  CPLR §§ 5225(b), 5227
and 5239 are priority-determining proceedings.  Siegel, New York Practice, 4th ed. § 521; *Bank Leumi Trust Co. v.
Liggett*, 115 A.D.2d 378, 380, 496 N.Y.S.2d 14 (1st Dep't 1985).

claims only since it was only DVP that had a cause of action. (Hartman Remand Aff., Ex. A,

<u>Affirmation in Opposition to Trustee's Motion to Intervene</u>, Ex. B, <u>DVP Settlement Agreement</u>;

Notice of Removal, Ex. B, Horan Aff., ¶ 3; A.)

      The Trustee asserted that it had claims on the basis of a turnover proceeding

instituted in bankruptcy court (the "Tokayer Complaint"). In the Tokayer Complaint, the Trustee

merely seeks the turnover of the DVP funds from respondent and ***does not allege any personal***

***liability against the respondent***. (Notice of Removal, Ex. B, Horan Aff., ¶¶7 &8 and Ex. D .) The

***sole cause of action*** in the Tokayer Complaint is asserted against Tokayer, as "an escrow holder

without any personal liability" and a "custodian of property belonging to the Debtor's bankruptcy

estate, as that term is used in Section 543 of the Bankruptcy Code[3]." (Notice of Removal, Ex. B,

Horan Aff., Ex. D .)

    The State Court Action that was removed by the Trustee involves two third-party non-

debtors. The DVP Funds are similarly remote to the Arbco bankruptcy and is not property of the

estate.

## ARGUMENT

### POINT I

### TRUSTEE HAS THE BURDEN OF PROVING JURISDICTION AND REMOVAL STATUTES ARE STRICTLY CONSTRUED

---

[3]     The Tokayer Complaint is itself deficient, improper and is subject to dismissal. The terms custodian is defined in 11 U.S.C. § 101(10) and refers to ***property of the debtor***. DVP is not a debtor and the DVP Funds are not property of the Arbco estate. Curiously, the Trustee seeks relief in the Tokayer Complaint under 11 U.S.C. § 542, although property held by custodians is specifically excluded. 11 U.S.C. § 542(a). The Trustee does not properly plead the elements of its alter ego claim. *Wm. Passalacqua Builders v. Resnick Developers*, 933 F2d 131, 139 (2nd Cir. 1991); *In re Ticketplanet.com*, 313 B.R. 46, 67 (Bankr. S.D.N.Y. 2004). The Tokayer Complaint improperly seeks to circumvent the more restrictive fraudulent conveyance claim process. *In re Teligent, Inc.*, 325 B.R. 134, 138 (Bankr. S.D.N.Y. 2005)(trustee cannot compel the turnover of non-estate property under 11 U.S.C. § 542, and circumvent the more restrictive fraudulent transfer claim process) citing *Orion Pictures Corp. v. Showtime Networks, Inc.* (In re Orion Pictures Corp.), 4 F.3d 1095, 1102 (2nd Cir. 1993); accord, *In re Ticketplanet.com*, 313 B.R. 46, 67 (Bankr. S.D.N.Y. 2004); *In re Shea & Gould*, 198 B.R. 861, 867 (Bankr. S.D.N.Y. 1996).

It is well established that the Trustee bears the burden of proving that federal jurisdiction exists to warrant the removal of the State Court Action to this Court. See, e.g., *California Public Employees' Retirement System v. Worldcom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004), cert. denied 543 U.S. 1080, 125 S. Ct. 862, 160 L. Ed. 2d 824 (2005); *Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir. 1998) ("It is also hornbook law that the party invoking federal jurisdiction bears the burden of proving facts to establish that jurisdiction").

It is similarly well established that removal statutes are strictly construed. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941); *Key Bank U.S.A., N.A. v. First Union National Bank of Florida*, 234 B.R. 827, 829 (M.D. Fla. 1999) (observing that removal statues are strictly construed because, among other reasons, "the exercise of removal is in derogation of state sovereignty" and "jurisdictional allegations for removal are extremely simple for a lawyer to draft"). A presumption against removal jurisdiction exists to the point that if there is a doubt as to whether federal jurisdiction exists, remand is appropriate. *Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1045-46 (2d Cir. 1991).

When a federal court lacks subject matter jurisdiction, the removed case must be remanded back to the state court. See, 28 U.S.C. §§ 1447(c), 1452. As shown below, the Trustee fails to meet its burden in showing federal jurisdiction over the State Court Action and the removed State Court Action should be remanded.

## POINT II

### COURT LACKS SUBJECT MATTER JURISDICTION UNDER 28 U.S.C. § 1441 BECAUSE NO FEDERAL QUESTION EXISTS

Although the Trustee removed under 28 U.S.C. § 1452, removal by Trustee of the State Court Action could not be based on the general removal provision, 28 U.S.C. § 1441. There is no diversity between the parties to the removed State Court Action. Tokayer and Taub are New York State citizens and there is no federal question. (Hartman Aff. ¶ 7.) An action can only be removed

under 28 U.S.C. § 1441 "if the action is one arising under the Constitution, laws and treaties of the United States." 28 U.S.C. § 1441(b). Applying the "well pleaded complaint rule", the petition in the removed State Court Action shows that it is not an action that "arises under" federal law. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("The presence or absence of federal question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."); see also *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998) ("the well pleaded complaint rule … provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.")

The petition filed by Taub in New York State court expressly involves only New York State's turnover statutes as they apply to the enforcement of Taub's New York State perfected judgment lien in the DVP Funds, an asset that is not property of the Arbco bankruptcy estate[4].

In light of the above, the Trustee can only look to the removal provisions in 28 U.S.C. §1452.

## POINT III

### THE NOTICE OF REMOVAL FAILS TO SUFFICEINTLY PLEAD FACTS THAT SUPPORT THE REMOVAL OF THE STATE COURT ACTION

The Trustee filed a notice of removal under 28 U.S.C. § 1452 and Bankruptcy Rule 9027. Although Bankruptcy Rule 9027 requires a "statement of the facts which entitle the party to filing the notice to remove", the notice of removal is entirely bare-bones lacking factual allegations showing entitlement to remove. The basis for removal is alleged by the Trustee in an entirely

---

[4] The Trustee has secured neither a judgment against Regensberg or DVP nor any other judgment against the DVP Funds and the DVP Funds remain to this date outside the ambit of "property of the estate". *FDIC v. Hirsch (In re Colonial Realty Co.)* 980 F. 2d 125, 131 (2d Cir. 1992).

conclusory manner and fails to satisfy even the rudimentary requirements of Rule 9027[5]. (Notice of Removal.)

In determining whether jurisdiction is proper, courts look only to the jurisdictional facts alleged in the notice of removal. *Colorado v. Symes*, 286 U.S. 510, 518-19, 52 S. Ct. 635, 76 L. Ed. 1253 (1932) ("The burden is upon him who claims the removal plainly to set forth by petition made, signed, and unequivocally verified by himself all the facts relating to the occurrence, as he claims them to be, on which the accusation is based.") The Supreme Court has held that "statutory procedures for removal are to be strictly construed. " *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32, 123 S. Ct. 366, 154 L. Ed. 2d 368 (2002). Out of respect for the limited jurisdiction of the federal courts and the rights of states, the court must resolve any doubts against removability. *Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1045-46 (2d Cir. 1991).

Even if the Trustee is a party to the State Court Action, the Trustee has failed to allege facts in the notice of removal that would entitle it to remove the State Court Action and the action should be remanded pursuant to 28 U.S.C. § 1452 and Bankruptcy Rule 9027.

## POINT IV

### REMOVAL UNDER 28 U.S.C. §1452
### <u>REQUIRES JURSIDICTION UNDER  28 U.S.C. §1334</u>

Under 28 U.S.C. § 1452 (a)  a "party may remove any claim or cause of action in a civil action … to the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334."

---

[5]  Even the order permitting the Trustee to intervene is ineffective since, as specifically advised by the New York State court, the order permitting intervention is not entered until a party obtains a transcript of the court hearing and submits it to the court for corrections and to be "so ordered." As a result the case and the file remain in the New York State court and the motion to intervene remains sub judice. (Notice of Removal, Aff. of J. Ted Donovan, ¶10.)

## THE COURT LACKS JURISDICTION UNDER 28 U.S.C. § 1334

The State Court Action, a garden variety state court judgment enforcement proceeding is not a "case under title 11" and 28 U.S.C. § 1334(a) has no application. Jurisdiction, if any, must necessarily be based on 28 U.S.C. § 1334(b).

Under 28 U.S.C. § 1334(b) district courts have original but not exclusive jurisdiction of proceedings for three categories of proceedings, namely proceedings "arising under title 11, or arising in or related to cases under title 11."

The removed State Court Action does not implicate bankruptcy jurisdiction. Actions arising *under title 11* involve claims "predicated on a right created by a provision of title 11." *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*, 130 B.R. 405, 407 (S.D.N.Y. 1991). When a cause of action is created by title 11, then the civil proceeding is one "arising under title 11". Collier on Bankruptcy, ¶3.01[3][c][i], at 3-14 (15th ed. 2009). The removed State Court Action, based on New York State's judgment enforcement and turnover statutes, is *not* predicated on a right created by a provision of title 11. Therefore, this court lacks "arising under" jurisdiction over the State Court Action.

Actions arising *in title 11* involve claims that are not based "on any right expressly created by title 11, but nevertheless, would have no existence outside of bankruptcy." *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*, 130 B.R. 405, 407 (S.D.N.Y. 1991). The removed State Court Action, a New York State proceeding between non-debtor parties involving non-estate property, certainly has existence outside of bankruptcy and, until the Trustee wedged its foot in the door and filed its notice to remove, the State Court was prepared to determine the State Cause Action. Therefore, this court lacks "arising in" jurisdiction over the State Court Action.

Since the claims under the State Court Action neither arise under or in title 11, the only basis left for jurisdiction under 28 U.S.C. § 1334 is "related to" jurisdiction. As to that basis, there is similarly no jurisdiction.

Actions *related to* a case under title 11 involve claims whose outcomes "could conceivably have any effect on the estate being administered in bankruptcy." *Id.* The Second Circuit's test "for determining whether litigation has a significant connection with a pending bankruptcy proceeding is whether its outcome might have any conceivable effect on the bankrupt estate." *Publicker Indus., Inc. v. United States (In re Cuyahoga Equip.)* 980 F.2d 110, 114 (2d Cir. 1992), citing *Pacor Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1983). An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action and which in any way impacts upon the handling and administration of the bankruptcy estate. *Pacor Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1983). Mere potential impact upon the debtor's estate is insufficient. Contingent liability will not suffice.

In this instance, the Trustee must obtain a series of decisions in various litigations to establish its claim to the DVP Funds before it can even assert that its claim is superior to the perfected judgment lien interest held by Taub[6].

The most important aspect of any of these tests is that "bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115 S. Ct. 1493 (1995). To rephrase this requirement slightly more broadly, a civil proceeding which has [1] no effect on the debtor or which would not impact upon [2] the administration of the bankruptcy case, or [3] on property of the estate, or [4] on the distribution to creditors, cannot find a home in the district court based upon its bankruptcy jurisdiction. Collier, *supra,* ¶ 3.01[3][c][v], at 3-30 (15th ed.2009)). The State Court Action satisfies none of these criteria. As a consequence, this court lacks jurisdiction over the State Court Action and it must remand the proceeding back to State Court on the instant motion of Taub.

---

[6] It is not even clear that the Trustee has standing to bring the actions it seeks to reverse pierce the corporate veil of Arbco to reach Regensberg and to pierce the corporate veil of DVP to reach the DVP Funds. See, e.g. *Shearson v. Wagoner*, 944 F.2d 114 (2d Cir. 1991).

property in bankruptcy[8].  Not only are the parties strangers to the estate, and their claims unrelated to the any claims in bankruptcy but it does not involve any property in which the debtor or the estate has any legally cognizable interest.  *In re Holland Industries, Inc.*, 103 B.R. 461, 469 (Bankr. S.D.N.Y. 1989).

The necessity of future action to fix liability after resolution of a pending action by the Tokayer Complaint or any additional actions required of the Trustee to establish a claim to the DVP Funds, precludes the exercise of "related to" jurisdiction. *Steel Workers Pension Trust v. Citigroup, Inc.*, 295 B.R. 747 (E.D.P.A. 2003); accord *In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 382 (3rd Cir. 2002) (upheld a finding that there was no "related to" jurisdiction since another lawsuit was required before the case would effect the bankruptcy proceeding).

The Trustee's assertion of an interest in the DVP Funds strains the limits of credibility.  In the State Court Action the Trustee made assertions that are neither founded in fact or law as a pretext for getting its shoe in the door of the State Court Action, not to be given to opportunity to prove those claims in the State Court Action, but as a basis for the notice of removal.  Taub has addressed the weakness of those claims before the State court and incorporates those arguments here by reference.  See, Notice of Removal, Ex. E, Memorandum of Law in Opposition to the Trustee's Motion to Intervene; Hartman Aff. Ex A, Taub's Opposition to Trustee's Motion to Intervene.

Since there is no "related to" jurisdiction, having already shown that there is no "arising in" or "arising under" jurisdiction, this court lacks jurisdiction over the removed State Court Action and should order its remand to the New York State court.

---

[8]       Many cases in which the courts have found "related to" jurisdiction over non-debtor litigation are cases which involve some possible claim of indemnity or contribution by the estate to the losing party.  *In re Omar Sharif Amanat*, 338 B.R. 574, 579 (S.D.N.Y. 2005).  However, the non-debtor removed State Court Action does not involve the estate even remotely.  There is no right or obligation implicated in that action to or by any party viz. vie the bankrupt estate or the debtor.

To come within the scope of "related to" jurisdiction, the litigation must have a "significant connection" with the bankruptcy. *19 Court St. Assocs.,* 190 B.R. 983, 966 (citing, *In re Turner*, 724 F.2d 338, 340 (2d Cir. 1983). It is important to note that "related to" jurisdiction is more limited in a chapter 7 liquidation bankruptcy, such as the Arbco bankruptcy. *Celotex Corp. v. Edwards,* 514 U.S. 300, 310, 115 S. Ct. 1493 (1995).

Jurisdiction is not present where the "related" controversy is too tangential to the bankruptcy case. *Turner,* 724 F.2d 338, at 341. "[R]elatedness does not lie where the dispute, while 'conceivably' related to the bankruptcy estate, is so only remotely." *In re Holland Industries, Inc.*, 103 B.R. 461, 468 (Bankr. S.D.N.Y. 1989).

The removed State Court Action is not related to the Arbco bankruptcy. It involves third party strangers to the estate and property which outside the ambit of the bankruptcy court's jurisdiction. The removed State Court Action is a New York State turnover special proceeding brought by Taub against Tokayer, who held the DVP Funds, to enforce Taub's perfected judgment lien in those funds. The parties to the special proceeding, Taub, Tokayer and DVP, are third party strangers to the Arbco bankruptcy[7] and the DVP Funds, paid by a stranger to the Arbco bankruptcy for a debt unrelated to bankruptcy debtor. Notwithstanding any claims made by the Trustee, the DVP Funds are not property of the Arbco bankruptcy estate. 11 U.S.C. § 541(a)(3); *FDIC v. Hirsch (In re Colonial Realty Co.),* 980 F. 2d 125, 131 (2d Cir. 1992). Even if the Trustee would at some later time obtain a judgment(s) on some claim to the DVP Funds, it would still not trump Taub's prior perfected judgment lien interest. Simply put, the State Court Action is too far removed that is not related to the Arbco bankruptcy.

Whether Taub satisfies their New York State perfected judgment lien by the turnover of by Tokayer of the DVP Funds will not effect the Arbco estate since it does not involve any claims or

_____

[7] The claim underlying the Taub judgment is unrelated to any claim Taub may make as a creditor of Arbco in bankruptcy.

## POINT V

## THE REMOVED STATE COURT ACTION IS NOT A CORE PROCEEDING UNDER 28 U.S.C. § 157

If the court finds "related to" jurisdiction, the removed State Court Action is not a core proceeding under 28 U.S.C. § 157. Generally, a core proceeding is one that involves a substantive right under title 11, or could only arise in the context of a bankruptcy case. *Joremi Enterprises, Inc. v. Hershkowitz (In re New 118th LLC)*, 396 B.R. 885, 890 (S.D.N.Y. 2008).

The Notice of Removal, lacking factual allegations supporting its assertion that the removed State Court Action is a core proceeding, in a wholly vague and conclusory manner, asserts that the removed State Court Action "[a]mong other things ... impacts and concerns the administration of the bankruptcy case (28 U.S.C. § 157 (b)(2)(A)); turnover of property of the Estate (28 U.S.C. § 157(b)(2)(E)); and otherwise effects the liquidation of assets and adjustment of debtor-creditor relationships under (28 U.S.C. § 157(b)(2)(O))."

Since the Trustee was unable to even write the word "core" we infer that the Trustee asserts the removed State Court Action is core under the two "catch-all" provisions of 28 U.S.C. § 157(b)(2) and since it asserts that the State Court Action involves the turnover of property of the estate. 28 U.S.C. §§ 157(b)(2)(A), (E), (O).

Noncore proceedings involve disputes over rights that have little or no relation to the Bankruptcy Code, do not arise under the federal bankruptcy law and would exist in the absence of a bankruptcy case. *Acolyte Elec. Corp. v. N.Y. (In re Acolyte Elec. Corp.),* 69 Bankr. 155, 162 (Bankr. E.D.N.Y. 1986), *order aff'd*, WL 47763 (E.D.N.Y. 1987).

It is always the burden of the party alleging bankruptcy court jurisdiction to establish its existence over the matter in a dispute. The Trustee's notice of removal is devoid of any factual allegations supporting its assertion that the claims in the State Court Action are "core", containing only conclusory allegations. As shown above, the court only need look at the notice of removal

and the absence of factual allegations to **deny** the Trustee's assertion that the claims in the State

Court Action are core. See *Colorado v. Symes*, 286 U.S. 510, 518-19, 52 S. Ct. 635, 76 L. Ed. 1253

(1932).

## THE REMOVED STATE COURT ACTION IS NOT CORE
## UNDER 28 U.S.C. § 157 (B)(2)(E)

The Trustee merely asserts that the State Court Action is a core proceeding under 28 U.S.C.

§ 157 (b)(2)(E), ("order to turnover property of the estate") without alleging any basis there for.

The Trustee's characterization of the State Court Action as a bankruptcy "turnover" is not

dispositive as to whether the proceeding is core. A proceeding is core under section 157(b)(2)(E)

where the proceeding is focused on the turnover of property that is indisputably property of the

estate, is matured, and is payable on demand or order, rather than upon a turnover of property in

which the estate has rights if the estate prevails. *J. Baranello & Sons, Inc. v. Baharestani(In re J.

Baranello & Sons)*, 149 B.R. 19 (Bankr. E.D.N.Y. 1992). A turnover proceeding can only be

considered core when its purpose if the collection rather than the creation, recognition or

liquidation of a matured debt. *Acolyte Electric Corp. v. City of New York*, 69 B.R. 155, 171

(E.D.N.Y. 1986) (when a bona fide dispute exists as to liability involving state law, then the

proceeding cannot be core under Section 157(b)(2)(E).)

The Trustee's claim to the DVP Funds is in dispute. The DVP Funds are not even "property

of the estate" under *FDIC v. Hirsch (In re Colonial Realty Co.)* 980 F. 2d 125, 131 (2d Cir. 1992).

They remain merely un-adjudicated remote claims. The Trustee has obtained no decision or order

that affirms its claims and must prevail in other litigations, whether to find Regensberg liable to

Arbco estate and to enforce that judgment against Regensberg's residual equity interest in DVP or

to the DVP Funds[9] or to reverse pierce Arbco's corporate veil to find Regensberg liability and to

---

[9]     Taub has already shown that the settlement which created the DVP Funds states that the DVP Funds were paid in settlement of DVP's claims and that Regensberg does not have any direct claim to the DVP Funds.

pierce the corporate veil of DVP or any other theory of claim to the DVP Funds and to assert that its claims would trump Taub's perfected claim. With respect the Trustee's claims, not only must a court decide whether the Taub's perfected judgment lien held by Taub trumps the claims made by the Trustee in that action, but a court must determine whether the Trustee, on behalf of the Arbco debtors estate, has any claim at all against Regensberg and/or DVP[10] and/or the DVP Funds at all.

Core jurisdiction cannot be found to exist under 28 U.S.C. § 157 (b)(2)(E) in a collection case where the debtor's right to unpaid funds is disputed and not fixed unless and until the Trustee prevails in litigation. *J.T. Moran Financial Corp. v. American Consolidated Financial Corp.*, 124 B.R. 931, 938 (E.D.N.Y. 1991).

Therefore, the State Court Action is not a core proceeding under 28 U.S.C. § 157(b)(2)(E)[11].

## THE REMOVED STATE COURT ACTION IS NOT CORE
## UNDER 28 U.S.C. §§ 157(B)(2)(O) OR 157(B)(2)(A)

The Trustee also incorrectly asserts that the State Court Action is a core proceeding under 28 U.S.C. § 157 (b)(2)(O). Under the catch-all provision for core jurisdiction set forth in 28 U.S.C. § 157(b)(2)(O), as in the case of a turnover proceeding, the subsection assumes that an asset of the estate is involved. *J.T. Moran Financial Corp. v. American Consolidated Financial Corp.*, 124 B.R. 931, 939 (E.D.N.Y. 1991).

Similarly this circuit has limited the scope of what can be a core proceeding under the catch-all provision of 28 U.S.C. § 157(b)(2)(A) within the scope of the decision in *Northern*

---

[10]    Whether based on state law regarding piercing the corporate veil, or on a collection claim against the DVP Funds based on an as of yet unattained judgment against Regensberg.

[11]    Similarly. the Tokayer Complaint is deficient, seeking the turnover of the DVP Funds to the Trustee pursuant to § 542 of the Code (Turnover of property of the estate). An action cannot be brought under § 542 when the claim to the property is in dispute. 5 Collier on Bankruptcy, ¶542.02[1]; *Stanziale v. Pepper Hamilton, LLP* (In re Student Fin. Corp.), 335 B.R. 539, 554 (D. Del. 2005)(in order to state a claim for turnover of property under § 542, a plaintiff ***must allege that transfer of the property has already been avoided or that the property is otherwise the undisputed property of the bankruptcy estate***, if the Trustee has not made, and cannot make that allegation, the Court will dismiss the complaint).

*Pipeline Construction Co v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S. Ct. 2858, 73 L.Ed.2d 598 (1982). The language of that sub-section could be construed to include almost any matter relating to bankruptcy, but the structure of the statute as a whole does not permit such a construction. Matters that merely concern the administration of the bankrupt estate tangentially are related non-core proceedings. *In re Ben Cooper, Inc.*, 896 F.2d 1394 (2nd Cir. 1990).

The Trustee must, and it has not, first establish in a litigation that the DVP Funds are property of the estate and that its claim has priority over Taub's perfected judgment lien before 28 U.S.C. § 157 (b)(2)(O) could conceivably have any application. In this instance, the Trustee has not vindicated its claim in court against Regensberg, DVP or with respect to the DVP Funds, let alone resolved the dispute as to whether those claims would trump the Taub claim. The removed State Court Action, if all, only tangentially concerns the administration of the bankruptcy estate. It follows therefore that the removed State Court Action is not core under 28 U.S.C. § 157(b)(2)(O).

## POINT VI

### THE REMOVED STATE COURT ACTION IS NOT A CORE PROCEEDING UNDER 28 U.S.C. § 157 AND ABSTENTION IS REQUIRED BY 28 U.S.C. § 1334 (C)(2) OR WARRANTED IN THE EXERCISE OF DISCRETION UNDER 28 U.S.C. § 1334 (C)(1)

### MANDATORY ABSTENTION UNDER 28 U.S.C. § 1334 (C)(2)

Taub asserts that pursuant to 28 U.S.C. §1334(c)(2) this court **must** abstain from hearing the removed State Court Action. Under 28 U.S.C. § 1334 (c)(2), this court "shall abstain" from hearing a "related to" case, commenced in state court, which could not have been commenced in federal court and which can be timely adjudicated in a State forum of appropriate jurisdiction.

Even if the Court had subject matter jurisdiction over the State Court Action, mandatory abstention and remand are required by 28 U.S.C. § 1334 (c)(2). See *In re Amanat*, 338 B.R. 574,

582 (S.D.N.Y. 2005). Non-core, "related to" proceedings are subject to mandatory abstention so long as certain prerequisites are met.

> Section 1334(c)(2) provides:
>> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated in a State forum of appropriate jurisdiction.

The provisions of mandatory abstention apply to a proceeding that has been removed from state court. *Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 446-47 (2d Cir. 2005)

A party seeking mandatory abstention must demonstrate that:

> (1) the motion to abstain was timely; (2) the action is based on a state law claim; (3) the action is "related to" but not "arising in" a bankruptcy case or "arising under" the Bankruptcy Code: (4) Section 1334 provides to sole basis for federal jurisdiction; (5) an action is commenced in state court; (6) that action can be "timely adjudicated" in state court.

*Lead I JV, LP v. North Fork Bank*, 401 B.R. 571 (E.D.N.Y. 2009) citing *Trs. Of Masonic Hall and Asylum Fund v. Price Waterhousecoopers LLP*, 2009 U.S. Dist. LEXIS 8953, 2009 WL 290543 (S.D.N.Y. 2009).

Taub shows all the elements required for mandatory abstention under 28 U.S.C. § 1334(c)(2), to wit:

> (1) the motion to abstain was timely, brought within 30 days if its removal to Federal Court;

(2) the action is based on a state law claim, namely the enforcement a New York State perfected judgment lien in the DVP Funds, an asset that it not property of the estate, by a New York State turnover proceeding commenced pursuant to Article 52 of the New York Civil Practice Law and Rules; (3) as demonstrated above, the State Court Action is at best "related to" but not "arising in" a bankruptcy case or "arising under" the Bankruptcy Code since the State Court Action since it does not involve claims predicated on a right created by a provision of title 11("arise under title

11"), does not involve claims that while not based "on any right expressly created by title 11 would have no existence outside of bankruptcy ("arise in title 11"); (4) if there is any basis for federal jurisdiction it is only under 28 U.S.C. § 1334; (5) the removed State Court Action, a New York State special proceeding, removed by the Trustee, was commenced in state court; (6) the removed State Court Action can be "timely adjudicated" in state court, since the turn-over proceeding before the New York Supreme Court is to merely determine the priority of various claims to the DVP Funds and whether any party has a claim superior Taub's perfected judgment lien and at the time the Trustee moved to intervene in the State Court Action, the state court was prepared to move ahead with the determination of whether there are any superior claims to the Taub's perfect judgment lien up until the time the Trustee filed its Notice of Removal, the day before its motion papers were due in the removed State Court Action[12].

Taub's claims are based on the laws of the State of New York and do not implicate the federal bankruptcy laws. It is not a case that by its nature could only arise in the context of a bankruptcy case. Taub's claims involve purely state law claims between "non-debtors". They are not claims that neither invoke substantive rights created by federal bankruptcy law nor are they claims that would be incapable of existence absent the bankruptcy case. See, *In re New 118th LLC*, 396 B.R. 885, 890 (Bankr. S.D.N.Y. 2008) ("The cause of action did not arise under title 11, and did not arise in this bankruptcy case. It is a garden variety state law claim between nondebtor parties."); *Cent. Vt. Pub. Serv. Corp. v. Herbert*, 2002 Dist. LEXIS 27080, 2002 WL 32882362 (D. Vt. 2002)("[M]atters involving relief between tow nondebtors may fall under a bankruptcy court's 'related to" jurisdiction [as opposed to core jurisdiction].")

---

[12]     Had the Trustee not sought to derail the proceedings in the State Court Action it is possible that the state court judge would have decided those proceedings before this court decides this motion.

24

All the relevant factors for mandatory abstention are met here. Accordingly, this court must abstain from hearing the State Court Action and remand it back to the New York Supreme Court.

## POINT VII

### IF MANDATORY ABSTENTION IS NOT WARRANTED, THE COURT SHOULD, IN ITS DISCRETION, ABSTAIN FROM HEARING THE REMOVED STATE COURT ACTION UNDER 28 U.S.C.§ 1334(C)(1))

In the event this court finds that there is federal jurisdiction over the removed State Court Action and that, even so, the requirement for mandatory abstention pursuant to 28 U.S.C. §1334(c)(2) have not been met, this court, in the exercise of its discretion, should abstain and remand the State Court Action pursuant to 28 U.S.C. § 1334 (c)(1) which states;

> [n]othing in [Section 1334] prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. Section 1334(c)(1).

In determining whether to exercise permissive abstention under § 1334(c) courts have considered one or more (not necessarily all) of twelve factors:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow

judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the court's] docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of non-debtor parties.

*In re 610 W. 142 Owners Corp.,* 1999 WL 294995 (S.D.N.Y. May 11, 1999).

Remanding the State Court Action will not have an effect on the efficient administration of the estate. The DVP Funds are not property of the estate. *FDIC v. Hirsch (In re Colonial Realty Co.)* 980 F. 2d 125, 131 (2nd Cir. 1992). It is a proceeding between non-debtor parties. A bankruptcy court has no jurisdiction to decide controversies between third parties which do not involve the debtor or his property, unless the court cannot complete its administrative duties without resolving the controversy. *In re Shirley Duke Assocs.,* 611 F.2d 15, 18 (2d. Cir. 1979).

Not only do State law issues predominate the removed State Court Action, they are the only issues. The Taub petition for a turnover of the DVP Funds in the removed State Court Action ask the court to apply only New York State law to determine whether there are any claims superior to the Taub's perfected judgment lien[13]. Equitable remand is appropriate since State court is better able to respond to suits involving state law. *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*, 130 B.R. 405, 408 (S.D.N.Y. 1991).

The nature of the law applicable to the removed State Court Action is not novel and there is a wealth of case law precedent to guide the state court in determining priority among claimants in New York State judgment enforcement actions. The court has broad discretion to remand a claim or cause of action to the court from whence it came based upon a finding that a state court is a more appropriate forum to try a suit involving questions of state law. *Osage Exploration Co. v. Smith*, 39 B.R. 966, 968 (Bankr. S.D.N.Y. 1984).

---

[13] Even if the Trustee wanted to assert fraud or corporate veil piercing claim, assuming that it has standing, these are claims based on State law. *Shearson v. Wagoner*, 944 F.2d 114 (2d Cir. 1991).

There is no jurisdictional basis other than, perhaps, "related to" jurisdiction under 28 U.S.C. § 1334. There are no federal claims in the removed State Court Action and the parties are not diverse. The claims made in the removed State Court Action are between non-debtors and the DVP Funds are not property of the estate.

As shown above, the claims asserted in the removed State Court Action are not core. Since the State Court Action implicates only New York State Law claims there is no need to sever state law claims from core bankruptcy matters.

Even if, arguendo, the removed State Court Action could have an effect on the size of the Arbco estate, this argument can be made in most claims removed to federal court under 28 U.S.C. § 1452 (a), the Trustee must show something more. *Stahl v. Stahl*, 2003 U.S. Dist. LEXIS 20112 at 13 (S.D.N.Y. 2003). Given the remoteness of the claims in the removed State Court Action to any federal issues, any additional burden on this Court's docket from the removed State Court Action cannot be justified.

The Trustee's removal notice was meant itself an attempt to forum shop. Although the issues presented in the removed State Court Action involve a New York State Turnover proceeding involving a New York State Judgment involving non-debtor and non diverse parties, the Trustee sought to wedge its foot in the door on the pretext of intervening to challenge Taub's perfected judgment lien in the DVP Funds, it true purpose was to wrest the case from the courts of New York State and remove to the Trustee's "home court," the bankruptcy court. What ever claims the Trustee had to assert could have been asserted in the State Court Action while it was pending in state court.

The parties to the State Court Action were all non-debtors and non-diverse parties. Neither Taub, Tokayer, DVP nor even Regensberg are debtors in a bankruptcy proceeding. Even the presence of the Trustee in the face of the presence of the other non-debtors strongly counsel against exercising federal jurisdiction. See, *Mt. McKinley Ins. Co. v. Corning, Inc.*, 399 F.3d 436, 448 (2d

Cir. 2005) (finding abstention appropriate since the debtor is not involved in the lawsuit and the plaintiffs seek to adjudicate the rights of non-debtors.); *Rahl v. Bande*, 316 B.R. 127, 137 (S.D.N.Y. 2004).

In light of the above, even if the court determines that it has jurisdiction and decides that it is subject to mandatory abstention, it should abstain in its discretion pursuant to 28 U.S.C. Section 1334(c)(1).

## POINT VIII

### THE COURT SHOULD AWARD COSTS AND ACTUAL EXPENSES, INCLUDING ATTORNEY FEES, INCURRED BY TAUB AS A RESULT OF THE TRUSTEE'S REMOVAL OF THE STATE COURT ACTION

The Trustee moved to intervene in the State Court Action, not to test the priority of any claim it may have to the DVP Funds over Taub's perfected judgment lien, but to file its notice of removal. Although the court deferred to the representations made by the Trustee as to its claims and the basis thereto in its motion to intervene in the State Court Action, that was a ruse. The Trustee never intended to litigate its claim in the State Court Action. After the court permitted the Trustee to intervene[14] and set a briefing schedule to determine the claims, the Trustee did not get to work on its papers for the State Court Action, it waited until the day before its papers were due and filed its bare bones, arguably defective notice of removal, which Taub has asserted above, has not reasonable basis and was filed solely to delay Taubs turnover action.

The Trustee abused the fact that it lacks living and breathing client in the normal sense. The Trustee's costs are paid out of the Arbco estate while Taub must reach into his pocket to pay counsel, including the additional bankruptcy counsel in order to bring the instant motion for remand.

---

[14] It bears remembering that the State court's decision has not been entered by the Trustee in accordance with the explicit instructions of the court and the case remains before Judge Friedman in the New York State Supreme Court.

Awards of costs including attorney fees in unsuccessful removal and remand cases are permitted under 28 U.S.C. § 1447(c) which provides "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The award of costs under § 1447(c) is discretionary and does not require a finding that the removant acted in bad faith. *Morgan Guar. Trust v. Republic of Palau,* 971 F.2d 917, 923 (2d Cir.1992) (noting that whatever bad faith requirement existed under the old statute was abolished by the 1988 revisions). As the Second Circuit observed in *Morgan,* the statute, as amended, makes no reference to state of mind "instead focusing strictly on the mere absence of subject matter jurisdiction." *Id.*

Section 1447(c) allows a district court the discretion to award attorney fees and costs related to unsuccessful removal. The Court of Appeals for the Third Circuit has found no need to establish explicit criteria with which to judge a claim for such fees. *Mints v. Educational Testing Service,* 99 F.3d 1253, 1260 (3d Cir. 1996). Bad faith is not a requirement for award of such costs and fees. Id. The determination should be made on a case-by-case basis, and a frivolous or insubstantial claim of jurisdiction for removal will support an award. Id. at 1261. Where difficult issues are raised and have a reasonable basis in the law, awards may not be appropriate. Id.

The district court in *Township of Whitehall v. Allentown Auto Auction* stated the Appeals Court's holding succinctly when it held an award "is particularly appropriate where the lack of jurisdiction is plain in the law and would have been revealed to counsel for the defendant with a minimum of research." *Township of Whitehall v. Allentown Auto Auction,* 966 F. Supp. 385, 386 (E.D.Pa. 1997).

The defects in the Trustee's notice of removal are detailed above and in Taub's opposition to the Trustee's motion to intervene in the State Court Action which are incorporated by reference. (Notice of Removal, Ex. E).

We believe that the court should find that the removed State Court Action should be remanded and upon such remand should, retain jurisdiction over the issue of an award pursuant to 28 U.S.C. § 1447(c) to require payment by the Trustee the just costs and any actual expenses, including attorney fees, incurred by Taub as a result of the removal so that Taub could later move for such an award.

## <u>CONCLUSION</u>

This court should remand the removed State Court Action back to the New York State Supreme Court and the award Taub the just costs and any actual expenses, including attorney fees, incurred as a result of the removal.


Dated:          April 13, 2010
                New York, New York


By: _____
Daniel M. Hartman, Esq.
489 Fifth Avenue, 28th Floor
New York, New York 10017
212-986-8600
dhart25@aol.com

Mark Frankel
Backenroth, Frankel and Krinsky
489 Fifth Avenue, 28th Floor
New York, New York 10017
212-593-1100
mfrankel@bfklaw.com

Attorneys for Petitioner