UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:                                        Chapter 7

Arbco Capital Management, LLP,                Case No. 07- 13283 (SCC)

                                  Debtor.       Hon. Shelley C. Chapman
-----------------------------------------------------------------x
Reuben Taub and Hindy Taub,                   Adv. Pro. No. 10-03007

                              Petitioners,

                  against

Ira D. Tokayer and Richard O'Connell, Chapter 7
Trustee of the estate of Arbco Capital Management,
LLP,

                              Respondents.
-----------------------------------------------------------------x

## TRUSTEE'S MEMORANDUM OF LAW
## IN OPPOSITION TO MOTION TO REMAND

Richard O'Connell (the "Trustee"), Chapter 7 bankruptcy trustee of the Debtor, Arbco Capital Management, LLP ("Arbco"), submits this Memorandum of Law in opposition to the motion (the "Motion") of Rueben Taub and Hindy Taub (jointly "Taub") seeking to remand this removed action (the "Taub Enforcement Action") to the New York State Supreme Court for New York County.

## PRELIMINARY STATEMENT

This is an action commenced by Taub to enforce a judgment obtained by Taub against DVP Global Trading LLC ("DVP") against certain funds

(the "Escrow Funds"). This instant Motion to Remand is predicated upon Taub's claim that a judgment obtained by Taub against DVP must have priority over any claims which the Trustee might ultimately be determined to hold over the Escrow Funds. In fact, the Trustee submits that if the Trustee is correct in his contention, as described in detail below, that DVP is the alter ego of the Debtor, the Trustee will have a claim that supersedes the priority of Taub's judgment. Thus, the Trustee submits that this Court should rule on the validity of the Trustee's claims as a necessary first step in the final determination of the priority of claims against the Escrow Funds.

Moreover, Taub's Motion is based entirely on the incorrect assumption that the Taub Enforcement Action is not a core proceeding. As will be shown below, the claims asserted by the Trustee are core proceedings, which must necessarily be resolved before the Taub Enforcement Action can be concluded.

Most importantly, since Taub was one of the petitioning creditors who initially invoked the jurisdiction of this Court as the appropriate forum for the liquidation of Arbco's assets, Taub cannot now complain that the priority of claims to the Escrow Funds as between Taub and the Trustee should be decided elsewhere.

## STATEMENT OF FACTS

Before the Court can analyze the question of its jurisdiction, it is important that the Court have a firm understanding of the facts underlying the competing claims to the Escrow Funds. The facts are set forth in detail in the

2

accompanying Declaration of J. Ted Donovan (the "Donovan Declaration"), and the Court is respectfully referred to the Donovan Declaration[1], which will not be repeated herein for sake of brevity. However, there are certain important points relating to the claims of the parties which need to be emphasized, and will be reviewed herein.

Taub filed a complaint against DVP on July 10, 2009, almost two years after the filing of the involuntary petition against Arbco, alleging that Taub loaned $1 million to DVP. A copy of the complaint is annexed to the Donovan Declaration as <u>Exhibit</u> "D". Importantly, Taub specifically pleaded in paragraph "4" of the complaint that "On or about December 26, 2006, DVP arranged for a Fifty Thousand Dollar ($50,000) partial payment of the Loan to the plaintiffs." In fact, as evidenced by the wire transfer statement annexed to the Donovan Declaration as <u>Exhibit</u> "E", it appears that the partial repayment of the loan was paid by the Debtor, Arbco, not DVP.

There are two separate reasons why the Trustee's claim may be superior to Taub's claim. First, and most important for the purposes of this Motion, it appears to the Trustee that DVP may be an alter ego of the Debtor. The principal of Arbco, Hayim Regensberg, operated at least three separate corporate entities through which he solicited investments, including DVP, Midwest Trading LLC ("Midwest") and Arbco. It is quite clear from the Trustee's review of the books and records of Midwest and Arbco that these two entities were used

---

[1] Terms defined in the Donovan Declaration are used herein without being re-defined.

3

interchangeably, and in fact, in the various adversary proceedings commenced by the Trustee seeking to set aside voidable transfers, the Trustee alleged that Midwest and Arbco should be substantively consolidated.

The Trustee believes that Regensberg used DVP in a similar manner, ignoring the corporate identities, and treating all three companies as one entity. Although no discovery has yet been had, substantial proof to support the Trustee's contention that DVP is the alter ego of the Debtor is found in the fact that Taub has alleged that Arbco paid part of the debt owed to Taub by DVP. Taub credited DVP with that payment when calculating the judgment that was entered in favor of Taub against DVP in the Taub Loan Action.

If the Trustee is successful in proving that DVP is the alter ego of Arbco, any property belonging to DVP is property of this Estate. Further, in such event, because the Arbco bankruptcy filing pre-dated the Taub Loan Action against DVP, the Trustee contends that the Taub Loan Action was stayed, and the judgment entered in favor of Taub is subject to avoidance.

The Trustee's second claim to the Escrow Funds is that the settlement proceeds are not entirely the property of DVP, but rather, some portion of the Escrow Funds must be allocated to Regensberg, and should not be subject to Taub's judgment execution against DVP.

As can be seen through a careful review of the Settlement Agreement, a copy of which is appended to the Donovan Declaration as <u>Exhibit</u> "A", there were two plaintiffs in the 2003 action, DVP <u>and</u> Regensberg. Taub

4

asserts that the settlement was solely in favor of DVP because the Settlement Agreement provides that $485,00 was to be paid to DVP. However, the entire Settlement Agreement clearly states that claims of both Regensberg and DVP against the defendants were being resolved by the stipulation. Given Regensberg's proclivity for fraud, the Trustee believes he is entitled to examine into whether DVP is in fact entitled to 100% of the Escrow Funds, or whether Regensberg improperly transferred his interest in the Escrow Funds to DVP.

## ARGUMENT

### This is a Core Proceeding

Taub correctly states the standards for review of a motion to remand, and the need for the Court to find that it has jurisdiction over the Taub Enforcement Action under 28 U.S.C. § 1334. However, by focusing solely on the removed Taub Enforcement Action, Taub skews the analysis. Importantly, the first litigation over the Escrow Fund was commenced by the Trustee in the Bankruptcy Action, with the Taub Enforcement Action following two months later. Thus, the determination of whether or not to remand should be made in light of the particular facts and unusual circumstances of this case.

Taub argues that the Taub Enforcement Action is not a core proceeding because it does not implicate bankruptcy jurisdiction. This is simply incorrect, with Taub's apparent confusion arising from the false premise that the only issue is the enforcement of Taub's judgment.

While the Bankruptcy Code may not be directly implicated in a determination of Taub's rights in and to the Escrow Fund, the question of the Estate's rights in and to the Escrow Fund are clearly core. Since there can be no award to Taub without first considering competing claims to the Escrow Fund, this Court has core jurisdiction to consider the competing claims of the Estate.

The Trustee asserts that the assets of DVP are property of the Debtor because DVP is the alter ego of the Debtor. An alter ego action is determined under applicable state law, but the alter ego litigation itself is a core proceeding. St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc., 884 F.2d 688, 701 (2nd Cir. 1989); see also, Central Vermont Public Service Corp. v. Herbert, 341 F.3d 186, 192 (2nd Cir. 2003).

The Trustee's claims against Regensberg and the question of whether any rights under the Settlement Agreement were improperly transferred by Regensberg to DVP are also core under 28 U.S.C. § 157(b), as they implicate considerations of turnover of property of the Estate, a potential fraudulent transfer and the administration of the Estate.

Interestingly, Taub does not address the most important reason why this Court has core jurisdiction: because Taub chose this forum in the first place by commencing the involuntary Chapter 7 proceeding as a petitioning creditor. Although Taub argues throughout the Motion that the Taub Enforcement Action concerns "third party strangers" to the bankruptcy, Taub is hardly a stranger.

6

Taub is, in fact, one of the petitioning creditors who commenced this involuntary case against Arbco. As the Second Circuit has explained,

> Our cases have upheld bankruptcy jurisdiction in what would otherwise be non-core proceedings where the party opposing the finding of jurisdiction has filed a proof of claim. In doing so, we have relied on two theories: (1) the proof of claim transforms litigation into a core proceeding; and (2) by filing the proof of claim, the creditor consents to the bankruptcy court's broad equitable jurisdiction.

Central Vermont Public Service Corp., supra, 341 F.3d at 191. The Trustee submits that if the act of filing a claim is sufficient to infer creditor consent to the core jurisdiction of the Bankruptcy Court, then the filing of an involuntary petition even more clearly manifests that consent. In fact, by commencing the involuntary case Taub not only consented to this Court's jurisdiction over Arbco and its assets, but actively sought that jurisdiction.

### B. The Court Should Not Abstain

As the Taub Enforcement Action is a core proceeding, mandatory abstention under 28 U.S.C. § 1334(c)(2) does not apply. In re Petrie Retail, Inc., 304 F.3d 223, 232 (2nd Cir. 2002).

The Trustee respectfully submits that, given the nature of the litigation at issue and the procedural history of these actions, the Court should not exercise its discretion to abstain under 28 U.S.C. § 1334(c)(1). There are twelve factors which the courts consider when examining permissive abstention, including:

7

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the court's] docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

In re 610 W. 142 Owners Corp., 1999 WL 294995, 3 (S.D.N.Y. 1999). It is respectfully submitted that the majority of these factors favor retention of the removed action.

In particular, the fact that by filing the involuntary petition Taub already chose this Court as the proper place for the liquidation of all of the assets of the Debtor, including claims against third parties such as DVP, is perhaps the determining factor of the twelve, just as it is the underlying basis for this Court's core jurisdiction.

Further, the Trustee submits that this Court is the better forum in which to determine the Trustee's alter ego claims against DVP. Specifically, the Trustee believes that the question of the priority of the Trustee's alter ego claim over the judgment obtained by Taub is one which implicates complex

8

considerations of bankruptcy law and the automatic stay, and should be determined by this Court and not the State Court.

Moreover, this Court already has before it both the Trustee's actions against Regensberg and the Trustee's action against the Escrow Agent, which need to be resolved so that the full extent of the Trustee's claims against the Escrow Fund can be determined. These actions must be concluded before the Taub Enforcement Action can be finally adjudicated. It is telling that the Motion is devoid of any discussion of the interplay between all of the pending litigation, and focuses only on the single action Taub commenced in the Supreme Court. The Trustee submits that this failure to consider the totality of the pending litigation is fatal to the Motion to remand.

In fact, although Taub raises allegations of forum shopping against the Trustee, since the Taub Enforcement Action was filed after both the commencement of the bankruptcy case and the Bankruptcy Action, and in light of Taub's initial failure to provide notice to the Trustee of the Taub Enforcement Action, the Trustee believes that forum shopping in this case is properly charged against Taub, not the Trustee. Thus, consideration of tenth factor also favors the Trustee.

9

## CONCLUSION

In light of the foregoing, the Trustee respectfully prays for the entry of an Order denying the Motion and granting such other and further relief as may be proper.

Dated: New York, New York
June 4, 2010

>GOLDBERG WEPRIN
>FINKEL GOLDSTEIN LLP
>Attorneys for the Trustee
>1501 Broadway, 22nd Floor
>New York, New York 10036
>(212) 221-5700
>
>By: _____
>J. Ted Donovan, Esq.

H:\sylvia\word\ARBCO Capital Management, LLP-Midwest Trading-5018.00\Avodiance Actions\Tokayer State Court Action\Memo of Law in Opposition to Remand Motion 06-02-10.doc