UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

In re:                                               Chapter 7

Arbco Capital Management, LLP,                       Case No. 07-13283 (SCC)

                            Debtor.

----------------------------------------------------------------x

Reuben Taub and Hindy Taub,

                            Petitioners,

       against                              Adv. Pro. No. 10-03007 (SCC)


Ira D. Tokayer and Richard O'Connell,
Chapter 7 Trustee of the Estate of
Arbco Capital Management, LLP,

                            Respondents.
----------------------------------------------------------------x

## MEMORANDUM DECISION AND ORDER


A P P E A R A N C E S:

GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP
1501 Broadway
22nd Floor
New York, NY 10036
 By:   J. Ted Donovan, Esq.

*Attorneys for Richard O'Connell, Chapter 7 Trustee of the Estate of*
*Arbco Capital Management, LLP*

BACKENROTH FRANKEL & KRINSKY, LLP
489 Fifth Avenue
New York, NY 10017
 By:   Mark A. Frankel, Esq.

Daniel M. Hartman, Esq.
489 Fifth Avenue, 28th Floor
New York, NY 10017

*Attorneys for Reuben Taub and Hindy Taub*

FOX HORAN & CAMERINI
825 Third Avenue
12th Floor
New York, NY 10022
By: JoonYun Kim

*Attorneys for Ira Daniel Tokayer*

Before: Hon. Shelley C. Chapman
United States Bankruptcy Judge

## **SHELLEY C. CHAPMAN**
## **UNITED STATES BANKRUPTCY JUDGE**

Before the Court is a motion (the "Motion") filed by Reuben Taub and Hindy Taub (together, "Taub") for an order remanding to the Supreme Court of the State of New York, New York County (the "State Court") the above-captioned adversary proceeding (the "State Court Action"), which was previously filed in the State Court and removed to this Court pursuant to a Notice of Removal. In the event this Court orders a remand, Taub also requests that this Court retain jurisdiction over the issue of an award of costs so that Taub can later formally move for an award of attorney fees.

Richard O'Connell, the chapter 7 trustee (the "Trustee") of the estate of Arbco Capital Management, LLP ("Arbco") filed an opposition to the Motion on June 4, 2010. Oral argument was held before this Court on June 23, 2010.

For the reasons set forth below, the Motion to remand the State Court Action is hereby granted and the request that I retain jurisdiction to consider an award of costs and expenses to Taub, including attorney fees, is denied.

## FACTS

**Background**

Hayim Regensberg ("Regensberg") was the managing partner of Arbco, a firm that was purportedly engaged in the business of providing financial and investment services. On October 19, 2007, Taub and other creditors of Arbco filed an involuntary petition against Arbco in this Court. The Order for Relief Under Chapter 7 of the Bankruptcy Code was entered in Arbco's case on November 26, 2007. The Trustee was appointed interim trustee of the Arbco estate and has subsequently qualified as the permanent chapter 7 trustee.

Following a jury trial in the United States District Court for the Southern District of New York, Regensberg was convicted of securities fraud and wire fraud in connection with the theft of more than $10 million in connection with investment scams he perpetrated through Arbco. By decision dated June 29, 2009, the Honorable Victor Marreo sentenced Regensberg to serve 100 months in jail.

**The Escrow Funds**

In 2003, Regensberg filed an action against Generic Trading of Philadelphia and others in the State Court under Index No. 111582-2003 (the "2003 Action"). When it became apparent that Regensberg had no individual claim and the cause of action instead belonged to DVP Global Trading LLP ("DVP"), an entity for which Regensberg was a Managing Member, the complaint in the 2003 Action was subsequently amended to include DVP as a party plaintiff. In November 2007, the 2003 Action was settled for the sum of $485,000, which was paid to DVP by the lead

3

defendant in the 2003 Action by check delivered to Ira D. Tokayer ("Tokayer"), as attorney for DVP. Tokayer continues to hold the $485,000 settlement amount (the "Escrow Funds") in escrow.

On October 15, 2009, the Trustee commenced an adversary proceeding in this Court against Regensberg, DVP, and Tokayer, as escrow agent, seeking a turnover of the Escrow Funds to the Arbco bankruptcy estate (Adv. Pro. No. 09-01528) (the "Turnover Proceeding"). The complaint filed in the Turnover Proceeding is predicated on sections 541, 542, 548, and 550 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 7001(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and seeks "to obtain a judgment directing a turnover and surrender of certain proceeds described herein currently being held by Defendant Ira D. Tokayer, Esq., as escrow agent." The complaint alleges that the Escrow Funds "rightfully constitute property of the estate" and demands judgment directing a turnover of the Escrow Funds pursuant to sections 541, 542, and 543 of the Bankruptcy Code, together with accrued interest and costs of the action.

**Taub's Judgment Against DVP**

In March 2000, Taub loaned $1 million to DVP (the "DVP Loan"). With the exception of $50,000 paid to Taub on December 26, 2006 by Arbco on account of such loan,[1] Taub has not received repayment of the DVP Loan. On July 10, 2009, Taub filed a verified complaint against DVP in the State Court, captioned <u>Reuben Taub and Hindy Taub v. DVP Global Trading, L.L.C.</u>, Index No. 602135-2009, demanding judgment against DVP in the amount of $950,000,

---

[1] This payment is evidenced by a wire transfer statement annexed to the Declaration of J. Ted Donovan in support of the Trustee's Opposition to the Motion. The verified complaint filed in Taub's July 10, 2009 action also states that "[o]n or about December 26, 2006, DVP arranged for a Fifty Thousand Dollar ($50,000) partial repayment of the Loan to the plaintiffs." See Verified Complaint dated July 9, 2009, filed in <u>Reuben Taub and Hindy Taub v. DVP Global Trading, L.L.C.</u>, Supreme Court of the State of New York, New York County, Index No. 602135-2009, at ¶ 4.

4

together with interest and costs. On November 9, 2009, Taub obtained a perfected judgment lien (the "Judgment") against DVP in the amount of $1,123,753.22 on account of the DVP Loan. Immediately thereafter, execution of the Judgment was served by a New York City Marshal with a levy and demand upon Tokayer to turn over the Escrow Funds. Tokayer did not turn over the funds to the Marshal in light of the Turnover Proceeding.

In December 2009, Taub commenced the State Court Action, captioned <u>Reuben and Hindy Taub, Petitioners v. Ira Daniel Tokayer, Respondent</u>, Index No. 116878-2009, seeking an order directing Tokayer to turn over the Escrow Funds to Taub as partial payment of the Judgment. The Trustee moved to intervene in the State Court Action on or about January 27, 2010, on the basis that he had a competing claim against the Escrow Funds.

The Trustee was granted permission to intervene by the Honorable Marcy Friedman at a hearing held in the State Court on February 25, 2010.[2] The Trustee then filed a Notice of Removal pursuant to section 1452 of title 28 of the United States Code and Bankruptcy Rule 9027 (the "Notice of Removal"), removing the State Court Action to the United States District Court for the Southern District of New York, for subsequent reference to this Court. The Notice of Removal was docketed by the Bankruptcy Court on March 22, 2010.[3] On April 13, 2010, Taub filed the Motion.

## **DISCUSSION**

Under section 1452(a) of title 28 of the United States Code, any party to a state court civil action may remove a claim or cause of action to the local district court provided that the claim or cause of action meets the jurisdictional requirements of section 1334. 28 U.S.C. § 1452(a). Standing Order M-61, dated July 10, 1984, of the United States District Court for the Southern

---

[2] Taub notes that a formal order has not yet been entered by the State Court granting the Trustee's motion to intervene in the State Court Action.

[3] Docket No. 1, Adv. Pro. No. 10-03007.

5

District of New York refers to this Court any cases removed to the district court pursuant to section 1334. See Standing Order M61 Referring to the Bankruptcy Judges for the Southern District of New York Any or All Proceedings Arising Under Title 11, dated July 10, 1984 (Ward, Acting C.J.).

To determine whether I should order a remand of the State Court Action or retain the action, I must conduct a multi-step analysis. I will first determine whether I have jurisdiction over the State Court Action under section 1334(b) of title 28 of the United States Code because the State Court Action "arises in," "arises under" or "relates to" the Arbco bankruptcy case. Should I find I have jurisdiction to hear and determine the action under any of those three jurisdictional provisions, I will next examine whether the State Court Action is a core or non-core proceeding under section 157 of title 28, which dictates the scope of my authority. Finally, I must consider whether (i) I am required to abstain from hearing the State Court Action pursuant to section 1334(c)(2) of title 28, notwithstanding the existence of subject matter jurisdiction, or (ii) although not required to do so, I should exercise my discretion to abstain from hearing the State Court Action pursuant to section 1334(c)(1) of title 28.

**I. The Court Has "Related To" Jurisdiction over the State Court Action**

Under section 1334 of title 28, district courts have original but not exclusive jurisdiction over all civil proceedings arising under, arising in or related to cases under title 11, which they have referred to the bankruptcy judges for this district. 28 U.S.C. § 1334(b). Actions "arising under" title 11 involve claims "predicated on a right created by a provision of title 11." <u>Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.</u>, 130 B. R. 405, 407 (S.D.N.Y. 1991) (citation omitted). Actions "arising in" title 11 involve claims "that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of bankruptcy." <u>Id.</u>

(citations omitted). Actions "related to" a case under title 11 involve claims whose outcomes "could conceivably have any effect on the estate being administered in bankruptcy." Id. (citations omitted). While I do not believe that the State Court Action "arises in" or "arises under" title 11, I find that I have "related to" jurisdiction over the State Court Action.[4]

The Second Circuit has set forth a test as to whether litigation has a significant connection with a pending bankruptcy proceeding, such that the litigation falls within the "related to" jurisdiction of the bankruptcy court. The Court has articulated the test for the litigation in question as "whether its outcome might have any 'conceivable effect' on the bankrupt estate." Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.), 980 F.2d 110, 114 (2d Cir. 1992) (citations omitted). "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." In re Extended Stay Inc., 418 B.R. 49, 55 (Bankr. S.D.N.Y. 2009) (quoting Joremi Enters. v. Hershkowitz (In re New 118th LLC), 396 B.R. 885, 890 (Bankr. S.D.N.Y. 2008)).

Taub argues that this Court lacks "arising in", "arising under", and "related to" jurisdiction, asserting that not only are the parties to the State Court Action "strangers to the estate,"[5] but also that the State Court Action does not involve any property in which Arbco or its estate has any legally cognizable interest. In addition, Taub claims that this Court does not have "related to" jurisdiction because resolution of another lawsuit (here, the Turnover Proceeding) is

---

[4] Taub asserts that the State Court Action does not arise under, does not arise in, and is not related to the Arbco bankruptcy case. Instead of making a contrary jurisdictional argument in this regard, the Trustee's opposition to the Motion fails to address this argument entirely; instead it only states a position on the core/non-core issues which I address below.

[5] Taub notes that his claim against DVP is unrelated to any claim he may make as a creditor of Arbco in its bankruptcy case.

7

necessary to fix liability before the State Court Action can have an effect on the bankruptcy proceeding, citing to Steel Workers Pension Trust v. Citigroup, Inc., 295 B.R. 747 (E.D. Pa. 2003) and In re Federal-Mogul Global, Inc., 300 F.3d 368, 382 (3d Cir. 2002) for their discussion of the jurisdictional standard articulated in Pacor, Inc. v. Higgins (In re Pacor), 743 F.2d 984 (3d Cir. 1984). Taub's position is that because the Trustee has not yet obtained an order directing the turnover of the Escrow Funds to the Arbco estate, much less an order declaring that the funds are property of the Arbco estate, there is no jurisdictional basis for this Court to hear the State Court Action as assets of the estate are not at issue.

Courts in this Circuit and others have found "related to" jurisdiction without requiring that a judgment has already been entered in a third party action. See, e.g., In re Worldcom, Inc. Sec. Litig., 293 B.R. 308, 322 (S.D.N.Y. 2003) (stating that "Pacor should not be read as requiring a judgment to have been entered against a third party defendant before the third party action can ever be found to be "related to" the bankruptcy proceeding); see also In re Amanat, 338 B.R. 574, 580 n.5 (Bankr. S.D.N.Y. 2005) ("[plaintiff's] reliance on predominantly Third Circuit authority in arguing that 'related to' jurisdiction is precluded where a later lawsuit is necessary to determine the estate's indemnification liability to the losing party is also misplaced").[6] While the Trustee has not yet obtained in a separate lawsuit a judicial finding that the Escrow Funds are property of the Arbco estate, he has established that the outcome of the State Court Action might have a "conceivable effect" on the estate. The Trustee asserts that DVP may be an alter ego of Arbco, due to the fact that Regensberg allegedly operated at least three separate corporate entities (Arbco, DVP, and Midwest Trading LLC) and treated such

---

[6] In Federal-Mogul, the Court noted that all of the Courts of Appeals have adopted the Pacor test with little or no variation with the exception of the Second and Seventh Circuits, which have adopted slightly different tests. See In re Federal-Mogul Global, Inc., 300 F.3d 368, 381 (3d Cir. 2002).

8

entities as one entity. If the Trustee is successful in proving these allegations, any property belonging to DVP, including the Escrow Funds, may be property of the Arbco estate. Thus, because the outcome of the State Court Action may affect Arbco and the administration of its case with regard to estate property to be distributed to creditors, I find that I have "related to" jurisdiction over the State Court Action.

## II. The State Court Action Is Not A Core Proceeding

Pursuant to Section 157 of title 28, a bankruptcy court has jurisdiction to hear both core and non-core matters, and the sole relevance of the core/non-core distinction is the scope of the bankruptcy court's authority. See In re Seatrain Lines, Inc., 198 B.R. 45, 49-50 (S.D.N.Y. 1996). When adjudicating core matters, the bankruptcy court may issue final orders and judgments; whereas, in non-core but related matters heard by the bankruptcy court, the court has more limited powers. In non-core matters that are otherwise related to a case under title 11, the bankruptcy court may not issue final orders and judgments without the consent of the parties; rather it must submit proposed findings of fact and conclusions of law to the district court. Id. at 50 (citing 28 U.S.C. § 157(c)(1)).[7]

As interpreted by district courts in this Circuit, "[c]ore proceedings are generally defined as matters arising under title 11, or arising in a case under title 11 and which would have no existence outside of the bankruptcy case." J.T. Moran Fin. Corp. v. American Consol. Fin. Corp., 124 B.R. 931, 937 (Bankr. S.D.N.Y. 1991); see also LTV Steel Co. v. City of Buffalo,

---

[7] Rule 9027(e)(3) of the Federal Rules of Bankruptcy Procedure provides that any party who has filed a pleading in connection with a removed cause of action, other than the party filing the notice of removal, "shall file a statement admitting or denying any allegation in the notice of removal that upon removal of the . . . cause of action the proceeding is core or non-core. If the statement alleges that the proceeding is non-core, it shall state that the party does or does not consent to entry of final orders or judgment by the bankruptcy judge . . . ." Fed. R. Bankr. P. 9027(e)(3). Taub has filed a statement pursuant to Rule 9027(e)(3) denying any allegation in the Notice of Removal that the State Court Action is a core proceeding and stating that he gives limited consent to the entry of final orders or judgment by the Bankruptcy Court with respect to the matters relating to the Notice of Removal and any motion to remand filed by Taub.

No. 00 CIV. 9429 (SHS), 2002 WL 484950, at *6 (S.D.N.Y. Mar. 29, 2002) ("[c]ore matters are those which fall within the bankruptcy court's area of expertise"). In order to qualify as a core proceeding, these matters "must invoke a substantive right provided by title 11." J.T. Moran Fin. Corp., 124 B.R. at 937. Section 157(b)(2) of title 28 sets out a non-exhaustive list of core bankruptcy proceedings, including issues concerning the administration of the bankruptcy estate, orders to turn over property of the estate, and other proceedings affecting the liquidation of assets of the estate or the adjustment of the debtor-creditor relationship. See, e.g., 28 U.S.C. §§ 157(b)(2)(A), 157(b)(2)(E), 157(b)(2)(O). For matters not explicitly described in subsection (b), "[t]he bankruptcy judge shall determine . . . whether a proceeding is a core proceeding . . . ." 28 U.S.C. § 157(b)(3).

In contrast, non-core proceedings "involve disputes over rights that . . . have little or no relation to the Bankruptcy Code, do not arise under the federal bankruptcy law and would exist in the absence of a bankruptcy case." J. Baranello & Sons, Inc. v. Baharestani (In re J. Baranello & Sons, Inc.), 149 B.R. 19, 24 (Bankr. E.D.N.Y. 1992); see also United Orient Bank v. Green, 200 B.R. 296, 298 (S.D.N.Y. 1996) ("[a] proceeding that involves rights created by bankruptcy law, or that could arise only in a bankruptcy case, is a core proceeding," while "[a]n action that does not depend on the bankruptcy laws for its existence and which could proceed in a court that lacks federal bankruptcy jurisdiction is non-core") (citations omitted).

Taub states that the Notice of Removal asserts that that removed State Court Action "[a]mong other things . . . impacts and concerns the administration of the bankruptcy case (28 U.S.C. § 157(b)(2)(A); turnover of property of the estate (28 U.S.C. § 157(b)(2)(E); and otherwise effects [sic] the liquidation of assets and adjustment of debtor-creditor relationships

under (28 U.S.C. § 157(b)(2)(O))."[8] While I note that "related to" jurisdiction is presumptively "non-core" jurisdiction, (see In re Amanat, 338 B.R. at 581; Cooper v. Ins. Co. of Pennsylvania (In re Ben Cooper), 924 F.2d 36, 38 (2d Cir. 1991)), I will address each of these alleged bases for core jurisdiction in turn.

### a. Section 157(b)(2)(A)

Subsection (A) of section 157(b)(2), while broadly worded to refer to core proceedings as "matters concerning the administration of the estate," does not render the State Court Action a core proceeding. 28 U.S.C. § 157(b)(2)(A). In order to avoid collapsing the distinction between core and non-core matters, courts have held that "[a] matter concerning the administration of an estate is a matter that the bankruptcy court's adjudication of which is an integral, if not essential, part of administering the estate." In re J. Baranello & Sons, Inc., 149 B.R. at 25; see also Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.), 4 F.3d 1095, 1102 (2d Cir. 1993) (holding that an overbroad construction of section 157(b)(2)(A) would "swallow the rule"). The adjudication of the State Court Action is neither integral nor essential to the Court's administration of the Arbco estate. While the Trustee asserts that (i) the alter ego litigation (which he has yet to commence), (ii) the Trustee's claims against Regensberg, and (iii) the question of whether any rights under the settlement agreement in the 2003 Action were improperly transferred by Regensberg to DVP are all core matters, none of these issues is a component of the State Court Action which is before me.

---

[8] See Memorandum of Law in Support of the Motion at p. 20. The Notice of Removal docketed as Docket No. 1 in Adv. Pro. No. 10-03007, does not appear to be the same document as the one quoted by Taub in his Memorandum of Law in Support of the Motion. The Court has not received the notice of removal quoted by Taub, but, for purposes of this decision, will respond to the quoted wording.

11

### b. Section 157(b)(2)(E)

While section 157(b)(2)(E) of title 28 provides that "orders to turn over property of the estate" are core proceedings (see 28 U.S.C. § 157(b)(2)(E)), the Trustee has not secured a judgment declaring that the Escrow Funds are property of the Arbco estate. To the contrary, the Trustee's contention appears to be based on the existence of the Turnover Proceeding, which claims that the Escrow Funds are property of the estate and seeks the turnover of such funds.[9] If the ownership of the Escrow Funds remains unresolved, an action to collect the disputed funds cannot be regarded as a turnover proceeding under the core jurisdiction of this Court. See In re J.T. Moran Financial Corp., 124 B.R. at 938 ("if the amount in question can be characterized as property of the estate only if the debtor prevails and not property of the estate if the defendants succeed . . . , there is no unconditional property of the estate subject to a turnover proceeding for core jurisdiction until the debtor ultimately prevails in the action on the contract"); In re Burger Boys, Inc., 183 B.R. 682, 686 (S.D.N.Y. 1994) ("where, as here, the 'property of the estate' is conditional upon the debtor prevailing in the adversary proceeding, courts have consistently held the adversary proceeding is noncore"); In re J. Baranello & Sons, Inc., 149 B.R. at 26 ("[b]ecause the amount of the Judgment, as well as the Debtor's right to enforce the Judgment . . . is disputed, the Adversary Proceeding is neither a turnover nor a core proceeding under section 157(b)(2)(E)").

### c. Section 157(b)(2)(O)

There is similarly no authority for core jurisdiction under the "catchall" item found in section 157(b)(2)(O), which includes as core proceedings "other proceedings affecting the

---

[9]  While this issue is not before me today, courts in this and other Circuits have held that a debtor cannot use the turnover provisions of the Bankruptcy Code to demand assets whose title is in dispute. See In re Seatrain Lines, Inc., 198 B.R. 45, 50 n.7 (S.D.N.Y. 1996) (a turnover action applies only to property that belongs to the estate). Accordingly, it appears that the Turnover Proceeding may be procedurally defective.

liquidation of the assets of the estate or the adjustment of the debtor-creditor . . . relationship."
28 U.S.C. § 157(b)(2)(O). Contrary to the assertion of the Trustee that there can be no award to Taub without first considering Arbco's competing claim to the Escrow Funds, the State Court Action cannot be considered a core proceeding solely because of the potential for increased value inuring to the Arbco estate. See e.g., In re Enron Corp., 349 B.R. 108, 112 (Bankr. S.D.N.Y. 2006) ("such an interpretation would eliminate entirely the core/non-core distinction"); In re J. Baranello & Sons, Inc., 149 B.R. at 26 ("[s]ubsection (O) does not render a proceeding core merely because the resolution of the action may result in more, or less assets of the estate").

After considering each of the alleged bases for core jurisdiction, I find that the State Court Action is a non-core proceeding.

**III. The Court Must Abstain Mandatorily from the State Court Action**

Having found that the State Court Action is "related to" the Arbco bankruptcy case (but that the non-core nature of the proceeding limits my authority to enter final orders in the action without the consent of all of the parties), I now turn to the question of abstention. Specifically, I must consider whether, notwithstanding the existence of subject matter jurisdiction, I am required to abstain from hearing the State Court Action pursuant to section 1334(c)(2) of title 28.

Section 1334(c)(2) of title 28 of the United States Code provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced and can be timely adjudicated in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). Courts have found that mandatory abstention is required if the following six factors are present: (1) the motion to abstain was timely made; (2) the action is based on a

13

state law claim; (3) the action is "related to" but not "arising in" a bankruptcy case or "arising under" the Bankruptcy Code; (4) section 1334 provides the sole basis for federal jurisdiction; (5) an action was commenced in state court; and (6) that action can be "timely adjudicated" in state court. In re Amanat, 338 B.R. at 581 (citing In re Worldcom, Inc. Sec. Litig., 293 B.R. at 331; In re Adelphia Communications Corp., 285 B.R. 127, 141 (Bankr. S.D.N.Y. 2002)). Mandatory abstention is not required if the party seeking mandatory abstention fails to prove any one of the statutory requirements. Id. (citations omitted).

Taub has satisfied all of the factors for mandatory abstention. The Motion was timely filed, within thirty days of the removal of the State Court Action. Second, the State Court Action is based on a state court claim, the enforcement of a perfected judgment lien in the Escrow Funds, by a turnover proceeding commenced by Taub pursuant to Article 52 of the New York Civil Practice Law and Rules. I have found that the State Court Action is related to Arbco's bankruptcy case, and I now find that section 1334 of title 28 provides the sole basis for federal jurisdiction because diversity is lacking and federal question jurisdiction has not been alleged in the State Court Action. Further, an action was commenced in the State Court, and it can be adjudicated there once remanded.[10]

Finally, based upon the information contained in the record, I believe that the State Court Action can be "timely adjudicated" in State Court. Taub has represented to this Court that the State Court Action will be heard on an "expedited" basis and can be resolved by the State Court in a timely manner. According to Taub, at the time the Trustee moved to intervene in the State Court Action, the State Court was prepared to move ahead in determining whether there are any

---

[10] The Second Circuit in Mt. McKinley Insurance Co. v. Corning Inc., 399 F.3d 436, 446 (2d Cir. 2005), held that mandatory abstention applies to cases that have been removed to a federal court but can be remanded.

14

superior claims to the Judgment against the Escrow Funds. The Trustee has not provided any evidence to the contrary.

As the six requirements for mandatory abstention have been satisfied, I must abstain from hearing this case and remand it back to the State Court. Because mandatory abstention is required, I need not reach the issue of discretionary abstention under section 1334(c)(1) of title 28.[11]

## IV. The Court Will Not Award Taub Costs and Expenses, Including Attorney's Fees

Taub has requested that I retain jurisdiction to determine whether he is entitled to an award of costs and expenses incurred by Taub as a result of the removal. Section 1447(c) of title 28 provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The U.S. Supreme Court issued guidance in Martin v. Franklin Capital Corp., 546 U.S. 132, 126 S. Ct. 704, 163 L. Ed. 2d 547 (2005), regarding the standards for determining a motion under section 1447(c). The Court stated that "the standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." Id. at 141; see also In re Amanat, 338 B.R. at 583; Sinclair v. City of Rochester, 2007 U.S. Dist. LEXIS 77566 (W.D.N.Y. Oct. 18, 2007) at *3-4.

---

[11] I note, however, that if I were faced with the question of whether discretionary abstention is warranted under section 1334(c)(1), after considering the factors set forth by the District Court in In re 610 W. 142 Owners Corp., 1999 U.S. Dist. LEXIS 6775 (S.D.N.Y. 1999), I believe that, in the exercise of my discretion, I should abstain from hearing the State Court Action. Abstention would not affect the efficient administration of the Arbco estate, as there has been no finding that the Escrow Funds are property of the estate. Moreover, state law issues predominate in the State Court Action, and there is no jurisdictional basis for me to hear the action other than section 1334 of title 28. Finally, I have already found that the State Court Action is a non-core proceeding, and, as only state law claims are implicated, it is feasible to sever the State Court Action from the core bankruptcy matters under my jurisdiction.

15

In this case, I find that the Trustee had an objectively reasonable basis for seeking removal, as evidenced by my finding "related to" jurisdiction over the State Court Action. No unusual circumstances exist which warrant a departure from the general rule that fees are not shifted. Notwithstanding the fact that Taub's request was styled as a request that I retain jurisdiction to award costs and expenses so that Taub could later move for such an award, I do not believe Taub is entitled to this award now or at a later date. Therefore, Taub's request that I retain jurisdiction to consider the issue of an award of costs and expenses, including attorney fees, is denied.

## **CONCLUSION**

For the reasons set forth above, the Court grants the Motion and accordingly remands the State Court Action to the State Court. Taub's request that I retain jurisdiction over the issue of the award of costs and expenses, including attorney fees, is denied.

IT IS SO ORDERED.

Dated: New York, New York
August 27, 2010

/s/ Shelley C. Chapman
UNITED STATES BANKRUPTCY JUDGE